514 S.E.2d 570

Vernona Belinda KEATON, as Guardian Ad Litem for Tony
FOSTER, Jr., a minor under the age of 11, Petitioner,

v.

GREENVILLE HOSPITAL SYSTEM, Greenville Memorial Hos-
pital, Donald G. Gregg, M.D., Greenville Emergency Medicine,
P.A. a/k/a Carolina Emergency Medicine, P.A., Respondents.

Vernona Belinda Keaton, and Tony Foster, Sr.,
as parents of Tony Foster, Jr., a minor
under the age of 11, Petitioners,

v.

Donald G. Gregg, M.D., Greenville Emergency Medicine, P.A.,
a/k/a Carolina Emergency Medicine, P.A., Respondents.

No. 24912.

Supreme Court of South Carolina.

Heard Dec. 15, 1998.

Decided March 1, 1999.

Rehearing Denied April 7, 1999.

Fletcher N. Smith, Jr., of Greenville, for petitioners.

G. Dewey Oxner, Jr. and Sally McMillan Purnell, both of Haynsworth, Marion, McKay & Guerard, of Greenville, for respondents Greenville Memorial Hospital and Greenville Hospital System.

Gregory A. Morton, Ashby W. Davis and Steven Snyder, all of Donnan, Morton & Davis, P.A., of Greenville, for respondent Dr. Donald G. Gregg.

TOAL, Justice:

These three consolidated medical malpractice actions are on appeal from an unpublished Court of Appeals decision affirming a jury verdict for the defense. Petitioners claim the Court of Appeals wrongly found an objection to a jury charge was not preserved for appellate review. We agree. Petitioners further argue that they are entitled to a new trial because the jury charge was erroneous. We disagree and find that no new trial is necessary.

### FACTUAL/PROCEDURAL BACKGROUND

Vernona Keaton, the mother and guardian ad litem for her son Tony Foster, Jr., ("Patient"), sued the Greenville Hospital System, Greenville Memorial Hospital, the emergency room physician Dr. Donald Gregg, Greenville Emergency Medicine, and Carolina Emergency Medicine ("the Defendants"). Patient's suit claimed the Defendants negligently caused him permanent brain damage by failing to diagnose and treat his hydrocephalic condition in a timely manner. Both parents of Patient instituted claims against the Defendants based on the same incident. The trial court dismissed the parents' claims against the hospital because the South Carolina Tort Claims Act's two year statute of limitations had passed.[1]

On January 7, 1992, Vernona Keaton brought her son to the Greenville Memorial Hospital emergency room. Patient had been experiencing vomiting, dizziness, and diarrhea. They entered the hospital at 2:45 p.m. and by 2:51 p.m. Patient was in an emergency room bed. Dr. Gregg saw Patient at 3:00 p.m. and performed a neurological examination. At this time Dr. Gregg took Patient's history, performed a physical exami-

---

1. The remaining claims of both parents and Patient will be referred to as those of Patient.

nation, and ordered certain tests including a CT Scan. A CT scan is the only test that reveals the presence of hydrocephalus. In this initial examination Dr. Gregg determined Patient was not suffering from any neurological defect. Dr. Gregg diagnosed him as probably dehydrated and instructed that Patient receive intravenous fluids.

During the next hour, Patient's condition did not improve. At 3:50 p.m., Dr. Gregg determined that Patient was suffering from an altered mental state and requested support. After completing more tests, at 4:49 p.m. Patient was taken to the CT scan. The CT scan immediately revealed Patient's hydrocephalus and the doctor requested a neurological consultation. At 5:10 p.m., Patient's pulse stopped. A doctor began mouth to mouth resuscitation and intubated Patient so that oxygen could flow. At 5:22 p.m. a neurosurgeon arrived and, based on the CT Scan results, inserted a needle into Patient's head to relieve the cranial pressure.

Hydrocephalus is a condition in which the ventricles in the brain become blocked. The blockage prevents the spinal fluid from adequately circulating through the brain and returning to the bloodstream. This blockage results in swelling and pressure within the cranium. Patient claims the doctors could have reduced the pressure caused by the water on his brain if they had given him oxygen and the drug Mannitol. Patient also believes that he should have received 100% oxygen before going to the CT Scan.

Following this episode, Patient suffered severe neurological damage. After a tracheostomy and a gastrostomy, Patient has remained in a vegetative state. He has remained in a chronic care facility since February 2, 1993.

Patient sued the Defendants, alleging negligence. Prior to the jury being charged, the Defendants submitted a request for a jury charge stating the actions of the medical providers were to be judged in light of the circumstances then and there existing, and not in hindsight. Patient made no objection to this request to charge prior to the initial charging of the jury. However, the trial judge inadvertently omitted this hindsight charge when charging the jury.

The Defendants promptly objected to the trial court's omission. The trial court responded to the omission by stating:

"How I missed that is beyond me. No, I have to charge that, I agree." Patient then objected to the charge being given at all to the jury. Patient claimed that the hindsight charge was not proper in a medical malpractice case. Patient stated his objection as:

Your Honor, my problem with the hindsight charge is that basically any records review by a medical expert is a review technically in hindsight which would, in effect, obviate the need for having any medical malpractice law whatsoever because if the patient in a situation with giving medical records to another expert witness to review them, there's no way for that medical physician to be on the scene in the operating room, or in the emergency room, at the exact time that it happened unless they could go back in time something like on Star Trek. So, therefore, the hindsight argument is really a red herring, which really undercuts a patient's right to receive adequate justice in a medical malpractice case. And I would argue, your honor, that it would be a violation of due process because what it does, in effect, is that it—it's a violation of equal protection and due process in a sense because no other people in terms of automobiles, and things of that nature, have to have a charge that hindsight in terms of someone driving down the highway, if they hadn't run a stop sign wouldn't have caused a wreck. And a medical negligence case is simply the same thing as an automobile accident to that extent. The doctor ran a medical red light. And other people giving opinions with regard to whether or not he violated the standard of care, which was generally recognized by physicians who are similarly situated practicing on a national level.

The judge disagreed with Patient and called the jury back in to be recharged. The recharging went as follows:

All right, ladies and gentlemen, sometimes in covering the charges I may omit something, and sometimes I don't. But just because I give you another charge, this does not have any more meaning than anything else I told you, okay. It just goes along with everything else that I have charged you.

Now I have told you that in considering a medical malpractice case, you and I don't know what the standards are, and you have to determine the facts and circumstances that

existed on the date and time in question when this child was brought into the emergency room. And in evaluating, determining what the standard of care is, you have to have expert testimony as to what the doctor, the hospital, the residents, and the nurses should or should not have done based on those circumstances. In giving their opinions, the experts must review the records at the time of the incident. In considering whether a physician, a resident, or nurse has exercised reasonable judgment in a given case, you must consider such judgment in relation to the facts as they existed at the time the judgment was made, and not in light of what hindsight may reveal.

After the recharging of the jury, the judge specifically asked if there were any further objections. Counsel for Patient replied, "None, your honor."

On November 21, 1995, the jury returned a complete defense verdict exonerating Dr. Gregg and the rest of the Defendants. The trial judge heard post-trial motions on December 7, 1995. Although none of Patient's written post-trial motions challenged the hindsight charge, Patient raised this issue in the post-trial hearing. The trial judge ruled from the bench denying all of Plaintiff's motions, including the one concerning the hindsight charge. Patient then filed a Notice of Appeal from the jury verdict.

In an unpublished decision, the Court of Appeals stated: "Plaintiffs also argue the trial court erred in instructing the jury that a physician may not be judged in light of what hindsight may reveal. *Insofar as the plaintiffs failed to object to the language of the charge after it was given,* this issue is not preserved for appellate review. *State v. Johnson,* 315 S.C. 485, 445 S.E.2d 637 (1994)." *Keaton v. Greenville Hospital System,* Opinion No. 97–UP–379 (Ct.App. June 23, 1997, revised August 28, 1997) (emphasis added).

This Court granted Patient's petition for a writ of certiorari to consider the following issues:

(1) Was the objection to the jury charge preserved?

(2) If the objection was preserved, was the hindsight charge erroneous?

## LAW/ANALYSIS

### I. PRESERVATION OF THE OBJECTION

▉ Patient argues the Court of Appeals erred in finding his objection to the jury charge unpreserved. We agree.

A clear understanding of the events that occurred during the jury charging process is important to the resolution of this case. Prior to the initial jury charge reading to the jury, Patient did *not* object to the hindsight jury charge. The court then instructed the jury, accidentally omitting the hindsight charge. The judge sent the jury out of the courtroom but instructed them not to deliberate the case. The Defendants objected to the trial court's omission of the hindsight charge. The trial court agreed with the Defendants that the hindsight charge should have been read. Patient then objected to the jury charge for the first time. Patient gave an explanation of his objection to the charge. The trial court overruled the objection and brought the jury back into the courtroom and read the omitted charge. The jury then left to deliberate the case and Patient did not renew his objection.

Patient's on the record explanation of his objection to the hindsight jury charge along with the trial judge's ruling on that issue is sufficient to preserve the objection for appeal. The objection is preserved despite Patient not objecting to the charge after it was read to the jury. Our recent decision of *State v. Johnson*, 333 S.C. 62, 64 n. 1, 508 S.E.2d 29, 30 n. 1 (1998), observed that the majority and dissenting opinions in *State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996), were "being read to hold that where a party's jury charge objections or requests are denied on-the-record after a pre-charge conference, the party must renew those objections or requests subsequent to the courts instructions to the jury. The majority opinion in *Whipple*, however, did not establish such a rule." *Id.* *Johnson* clarified the confusion in *Whipple* by stating, "where a party requests a jury charge and, after opportunity for discussion, the trial judge declines the charge, it is unnecessary, to preserve the point on appeal, to renew the request at [the] conclusion of the court's instructions." *Id.* The authority relied on by the Court of Appeals does not stand for the proposition that Patient had to object after the jury charge was read to preserve the objection for review on

appeal.[2] Like the petitioner in *Johnson*, Patient objected on the record and the trial judge specifically ruled on the objection.

One distinction between *Johnson* and the instant case is that *Johnson* was a criminal matter and the current case involves a civil dispute. However, Rule 20(b), SCRimP, is the criminal procedure equivalent to Rule 51, SCRCP at issue in the current case. The Reporter's Notes state: "[Rule 20, SCRimP] . . . is taken from Rule 51, SCRCP . . ." Reporter's Notes, Rule 20, SCRimP. The two rules are similar and encompass similar policy goals.[3] As in *Johnson*, there was an opportunity for discussion on the record and the trial judge specifically ruled on the jury charge. Patient's objection satisfied Rule 51's purpose of ensuring that the parties have given the trial judge a chance to resolve disputed issues relating to jury instructions.

## II. PROPRIETY OF THE HINDSIGHT CHARGE

■ Patient argues the hindsight jury charge as given constitutes error warranting a new trial. We disagree.

■ Even though Patient preserved his argument for appeal, we believe a remand is unnecessary because the judge adequately charged the jury in respect to the law of medical malpractice in South Carolina. A jury charge is correct if

---

2. The Court of Appeals decision erroneously cites *State v. Johnson*, 315 S.C. 485, 445 S.E.2d 637 (1994) for the proposition: "Insofar as the plaintiffs failed to object to the language of the charge after it was given, this issue is not preserved for appellate review." That case does not stand for this proposition; it simply holds that the complete failure to object to a jury charge prevents review on appeal.

3. The operative language of Rule 20, SCRimP states:
"[T]he parties shall be given the opportunity to object to the giving or failure to give an instruction before the jury retires, but out of the hearing of the jury. Any objection shall state distinctly the matter objected to and the grounds for objection. Failure to object in accordance with this rule shall constitute a waiver of objection."
  Rule 51, SCRCP's operative language reads:
"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

"[w]hen the charge is read as a whole, it contains the correct definition and adequately covers the law." *State v. Johnson,* 315 S.C. 485, 487, 445 S.E.2d 637, 638 n. 1 (1994) (citing *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994)); *see also State v. Rabon,* 275 S.C. 459, 272 S.E.2d 634 (1980) (holding that a jury charge which is substantially correct and covers the law does not require reversal).

In *King v. Williams,* 276 S.C. 478, 279 S.E.2d 618, 620 (1981), this Court put forth the standard of care for a medical practitioner. This Court held: "The degree of care which must be observed is, of course, that of an average, competent practitioner *acting in the same or similar circumstances." King,* at 482, 279 S.E.2d at 620 (emphasis added). Since the *King* decision, our Court of Appeals has defined medical malpractice as "the failure of a physician to exercise that degree of care and skill which is ordinarily employed by the profession generally, *under similar conditions and in like surrounding circumstances," Jernigan v. King,* 312 S.C. 331, 333, 440 S.E.2d 379, 381 (Ct.App.1993) (emphasis added). The standard for recovery has been summarized, "To recover for medical malpractice, a plaintiff must show failure by a physician to exercise that degree of care and skill which is ordinarily employed by the profession *under similar conditions and in like circumstances," Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E.2d 40, 45 (Ct.App.1987) (citing *Welch v. Whitaker,* 282 S.C. 251, 317 S.E.2d 758 (Ct.App.1984)) (emphasis added). In addressing the issue of hindsight in medical actions, the Court of Appeals has stated: "The physician's chief concern when treating a patient should be the patient's best interests and *not* what a lay jury, untrained in medicine and *employing perfect hindsight,* might later conclude he or she should have disclosed." *Hook v. Rothstein,* 281 S.C. 541, 553, 316 S.E.2d 690, 697–98 (Ct.App.1984) (emphasis added).

■ Even though the jury charge in the present case was not a word for word quotation of previous case law, we believe that the charge adequately covered the law of South Carolina medical malpractice. "The substance of the law is what must be instructed to the jury, not any particular verbiage." *State v. Smith,* 315 S.C. 547, 554, 446 S.E.2d 411, 415 (1994). The contested part of the hindsight jury charge states: "In considering whether a physician, a resident, or nurse has exercised

reasonable judgment in a given case, you must consider such judgment in relation to the facts as they existed at the time the judgment was made, and not in light of what hindsight may reveal." Patient opposed the hindsight charge at trial by saying, "my problem with the hindsight charge is that basically any records review by a medical expert is a review technically in hindsight." Since his experts gained their knowledge from records reviews, Patient was concerned that the charge gave the impression that in order to testify as an expert, the doctor had to be in the emergency room.

We believe that Patient's argument is not supported by a reasonable interpretation of this jury charge. A common theme in the area of medical malpractice is that the jury must look at the doctor's actions "under similar conditions and in like circumstances." The hindsight jury charge in this case merely elucidated the meanings of "similar circumstances" and "like conditions." The jury charge did not restrict record reviews as Patient claims. The trial judge even instructed the jurors that:

> [Y]ou and I don't know what the standards are, and you have to determine the facts and circumstances that existed on the date and time in question when this child was brought into the emergency room. And in evaluating, determining what the standard of care is, *you have to have expert testimony* as to what the doctor, the hospital, the residents, and the nurses should or should not have done based on those circumstances. In giving their opinions, *the experts must review the records at the time of the incident.* (Emphasis added).

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial. If, as a whole, the charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error." *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E.2d 321, 330 (Ct.App.1995) (citing *Manning v. Dial*, 271 S.C. 79, 245 S.E.2d 120 (1978); *Dickard v. Merritt*, 256 S.C. 458, 182 S.E.2d 886 (1971); *State v. Barksdale*, 311 S.C. 210, 428 S.E.2d 498 (Ct.App.1993)). When viewing the challenged portion of the jury charge "as a

whole" with the rest of the judge's instruction, we believe the trial court adequately charged South Carolina law.

Even if this Court assumed the hindsight charge was confusing, any effect that resulted from this charge does not warrant reversal.

[A] confusing charge alone is insufficient to warrant reversal. *State v. Jefferies*, 316 S.C. 13, 446 S.E.2d 427 (1994). Jury instructions must be considered as a whole, and if, as a whole, they are reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *State v. Barksdale*, 311 S.C. 210, 428 S.E.2d 498 (Ct.App.1993). When reviewing a trial judge's instruction for error, this court must consider the instructions in their entirety. *State v. Andrews*, 324 S.C. 516, 479 S.E.2d 808 (Ct.App.1996). In order to find the error harmless, we must determine beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Id.*

*State v. Kerr*, 330 S.C. 132, 498 S.E.2d 212, 218 (Ct.App.1998). We therefore find that, as a whole, the jury charge was adequate and does not require a new trial.

### CONCLUSION

Based on the foregoing, we **AFFIRM AS MODIFIED** the decision of the Court of Appeals.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.