522 S.E.2d 350

**Barbara EVANS, Melika Eagleton, Christine Barber, Carol Johnson, Carol Munn, Blostine Humphries, Brenda Nichols and Marie Wilson, Respondents,**

v.

**TAYLOR MADE SANDWICH COMPANY, Jack W. Friar, and Landco, Inc., Appellants.**

No. 3038.

Court of Appeals of South Carolina.

Submitted June 8, 1999.

Decided Aug. 23, 1999.

David W. Keller, Jr., of Turner, Padget, Graham & Laney, of Florence, for appellants.

Chalmers C. Johnson, of Wukela Law Firm, of Florence, for respondents.

STILWELL, Judge:

Taylor Made Sandwich Company appeals a jury verdict awarding Barbara Evans, Melika Eagleton, Christine Barber, Carol Johnson, Carol Munn, Blostine Humphries, Brenda Nichols, and Marie Wilson damages for their employer's violation of the Payment of Wages Act. Taylor Made also appeals the verdict in favor of Evans and Eagleton for wrongful discharge. We affirm.[1]

## FACTS

Taylor Made employed approximately forty-two employees to produce and deliver sandwiches to 250 customers. The employees in this case claimed that Taylor Made failed to live up to its promise to pay them 0.6133 cents per sandwich produced. The employees claimed the price quoted was the per sandwich rate but Taylor Made calculated wages based on a per package rate, which could include one and a half or two sandwiches.

Evans, Barber, Eagleton, and Johnson filed a wage complaint with the South Carolina Department of Labor. The Department investigated Taylor Made. Taylor Made's owner, Jack Friar, discharged Evans approximately one hour after the Department finished investigating, citing excessive absenteeism as the reason for the discharge. He also discharged Eagleton for excessive absenteeism on her first day back at

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

work following the investigation. Barber and Johnson quit before the Department's investigation.

At trial, the jury awarded the employees damages for wrongfully withholding wages and wrongful discharge. Taylor Made then moved for a judgment notwithstanding the verdict or in the alternative, for a new trial or new trial *nisi* remittitur asserting the jury resorted to pure speculation in determining damages. The trial court denied the motions. The court then granted the employees' motion to treble the amount of wages withheld pursuant to S.C.Code Ann. § 41–10–80(C) (Supp.1998).

## SCOPE OF REVIEW

 In ruling on motions for directed verdict and JNOV, we view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions; the motion must be denied where either the evidence yields more than one inference or its inference is in doubt. *Strange v. South Carolina Dep't of Highways & Pub. Transp.,* 314 S.C. 427, 445 S.E.2d 439 (1994). When considering directed verdict and JNOV motions, we lack the authority to decide credibility issues or to resolve conflicts in the testimony and therefore, the trial court will not be reversed unless there is no evidence to support its ruling. *Creech v. South Carolina Wildlife & Marine Resources Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997).

 Similarly, "[w]hen the jury's verdict is inadequate or excessive, the trial judge has the discretionary power to grant a new trial *nisi.*" *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 600, 493 S.E.2d 875, 883 (Ct.App.1997), *cert. denied* (Oct. 9, 1998). However, compelling reasons must be given to invade the jury's province. *Id.* "The denial of a motion for a new trial *nisi* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion." *Id.* at 601, 493 S.E.2d at 883.

 Lastly, "[a] new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality,

corruption, or other improper motive." *Knoke v. South Carolina Dep't of Parks, Recreation & Tourism,* 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996). This court grants the jury's determination of damages substantial deference. *Id.*

## DISCUSSION

### I. Failure to Pay Wages

█ Taylor Made contends the trial court erred in failing to grant its directed verdict, JNOV, new trial, and new trial *nisi* remittitur motions. We disagree.

Under the Payment of Wages Act, an employer is required to notify an employee of the wages agreed upon at the time of hiring and must give written notice if the wages are decreased. S.C.Code § 41–10–30(A) (Supp.1998). An employer is also required to pay all wages due within forty-eight hours of discharge or by the next regular payday if that payday is within the next thirty days. S.C.Code Ann. § 41–10–50 (Supp. 1998). The amount of unpaid wages may be trebled and costs and attorney's fees may be added pursuant to the Act. S.C.Code Ann. § 41–10–80(C) (Supp.1998).

Taylor Made posted a document on a wall at the workplace that stated:

TO ALL COMMISSARY EMPLOYEES:

Effective Immediately:

Each employees [sic] pay will be 0.6133 per sandwich. Your job consist [sic] of the necessary work to prepare sandwiches, and to keep the commissary clean!!

The pay period will be 6:00 each Friday.

Sincerely,

/s Jack W. Friar

President

P.S. There will be NO BREAKS!!

The Employees testified they interpreted this document as Taylor Made's promise to pay the Employees 0.6133 cents per sandwich produced. The Employees claim Taylor Made never paid them the posted 0.6133 cents per sandwich rate because Taylor Made calculated wages based on a per package rate, which may include one and a half or two sandwiches, rather

than a per sandwich rate. Each Employee testified Taylor Made underpaid them for various amounts.

The employees further testified that Friar (1) threatened to fire any employee who complained, (2) forced employees to take an additional day off without pay if the employee missed a work day, (3) arbitrarily deducted their paychecks for alleged laziness, and (4) cut wages without any notice.

The employees also testified Taylor Made failed to pay the wages promised even though the employees were separated from employment for over thirty days. Even if the pay rate was based on a per package rate, rather than per sandwich, the employees testified Taylor Made failed to pay wages due at the 0.6133 cents rate as specified in the document posted by Taylor Made.

■ Generally, factual disputes under the Act are to be determined by a jury. *See Duck v. Wallace Assocs.*, 313 S.C. 448, 438 S.E.2d 269 (Ct.App.1993). The posted sign is susceptible to more than one interpretation because the employees and Taylor Made differed on what constituted a sandwich. That evidence as well as the employees' testimony regarding Taylor Made's refusal to pay them all wages due created a factual dispute to be resolved by the jury. Therefore, the trial court did not err in denying Taylor Made's motions.

## II. Wrongful Discharge

■ Taylor Made further contends the trial court erred in failing to grant its directed verdict, JNOV, new trial absolute, and new trial *nisi* remittitur motions for the wrongful discharge claims brought by Evans and Eagleton. We disagree.

■ South Carolina recognizes an exception to the employment at-will doctrine "[w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy." *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). This public policy exception clearly applies in cases where an employer requires an employee to violate the law, and to situations where the reason for the employee's termination was itself a violation of criminal law. *Id.; see Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995) (holding that

the trial court erred in granting the employer's Rule 12(b)(6) motion because the issue of whether the public policy exception applied to the situation where an employee is terminated in retaliation for reporting and testifying about radioactive contamination and unsafe working conditions at a nuclear facility is a novel issue and further development of the facts was warranted).

While the public policy exception applies to an employee who is required to violate criminal law or where an employer's termination of an employee is itself a violation of criminal law, it has never been explicitly applied to the violation of a civil statutory law. Yet in *Garner*, the supreme court stated

While we have applied the public policy exception to situations where an employer requires an employee to violate a criminal law, and situations where the reason for the employee's termination was itself a violation of the criminal law, we have never held the exception is *limited* to these situations.

*Garner*, 318 S.C. at 226, 456 S.E.2d at 909 (emphasis in original).

The supreme court has refused to extend the public policy exception to instances where the employee has a statutory remedy. *Stiles v. American Gen. Life Ins. Co.*, 335 S.C. 222, 516 S.E.2d 449 (1999) (Toal, J., concurring) (citing *Dockins v. Ingles Markets, Inc.*, 306 S.C. 496, 413 S.E.2d 18 (1992) and *Epps v. Clarendon County*, 304 S.C. 424, 405 S.E.2d 386 (1991)).

Contrary to the situation in both *Epps* and *Dockins*, in this case Evans and Eagleton did not have a statutorily provided remedy for their wrongful discharge cause of action. While the law of this State provides a remedy for the recovery of wages which remain unpaid after termination, it does not provide a remedy for the wrongful termination itself. This court has held that whether an employer's retaliatory discharge of an employee who threatened to invoke rights under the Payment of Wages Act was subject to the public policy exception was a novel issue. *Keiger v. Citgo*, 326 S.C. 369, 482 S.E.2d 792 (Ct.App.1997). In reversing the trial court, the court in *Keiger* followed *Garner* and held that the issue should not be decided in a Rule 12(b)(6) motion to dismiss.

In this case, we have the same issue that the court addressed in *Keiger,* but in a different procedural posture. Here the facts were fully developed at trial and the trial court basically submitted to the jury two issues to determine. First, the jury had to determine whether Taylor Made terminated Evans and Eagleton because they had filed a wage complaint with the Department. If the jury concluded the termination was for that reason and was therefore a retaliatory discharge, then they were to determine if such a retaliatory discharge violated public policy. *See Garner,* 318 S.C. at 226, 456 S.E.2d at 908–10 (holding that, generally, determining whether an employer's discharge violated public policy is a factual question for the jury).

Friar terminated Evans only one hour after the Department's investigation and terminated Eagleton the very next time she came to work. We find the record replete with evidence for the jury to conclude the excessive absenteeism reason articulated for discharging Evans and Eagleton amounted to mere pretext because Friar knew of the absenteeism weeks in advance yet failed to take action until the Department investigated. Evans and Eagleton testified other employees, who did not sign the complaint with the Department, had equal or worse absenteeism records, yet were not fired. Numerous witnesses testified Friar repeatedly warned employees he would fire them for complaining.

Having determined that the terminations were in fact retaliatory, the jury then obviously determined that discharging an employee on those grounds is, and should be, a violation of the public policy of this State.

We therefore find the record contains sufficient evidence to affirm the jury's verdict and the trial court's denial of Taylor Made's motions. *See Linder v. Paramount Acceptance Corp.,* 291 S.C. 539, 544, 354 S.E.2d 567, 569–70 (Ct.App.1987) (noting the futility in personally calling for unpaid wages amounted to evidence in the record sufficient, along with other evidence, to overcome the employer's motions for directed verdict and new trial motions).

**AFFIRMED.**

CURETON and CONNOR, JJ., concur.