584 S.E.2d 423

Kibby DAVES and Jane Daves, Plaintiffs,

v.

Jim R. CLEARY, M.D.; Mary Black Memorial Hospital; Jack M. Cole, M.D., both individually and as Agent for Piedmont Internal Medicine Associates, P.A.; and Piedmont Internal Medicine Associates, P.A.; Defendants,

Of whom Kibby DAVES is, Respondent,

and

Jim R. Cleary, M.D. is, Appellant.

No. 3655.

Court of Appeals of South Carolina.

Heard April 8, 2003.
Decided June 16, 2003.
Rehearing Denied Aug. 22, 2003.

220

William S. Brown, of Greenville, for Appellant.

David W. Goldman, Diane M. Rodriguez, and Kristi F. Curtis, all of Sumter, for Respondent.

CURETON, J.:

In this medical malpractice case, the physician appeals from a jury verdict in favor of the patient. The physician alleges the circuit court judge erred in (1) failing to give requested instructions regarding the standard of care; (2) allowing the patient's medical expert to testify regarding the standard of care; (3) failing to grant a motion for a directed verdict or new trial; and (4) failing to grant a new trial where there were inconsistent verdicts. We affirm.

## FACTS

On March 23, 1996, Kibby Daves and his wife, Jane, visited with his parents and ate fried fish. On their way back from his parents' house, Daves and Jane stopped at her parents' house to visit, where Daves began to suffer from chest pains, nausea, and vomiting. The pain radiated to his shoulder, but the pain was later relieved after Daves burped several times.

Daves had suffered a heart attack in 1986, so the pain alarmed him enough to go to the hospital. By the time he arrived at the hospital, however, his pain was gone. Daves informed Dr. Cole, his primary physician, that the pain was different from the pain he suffered with his 1986 heart attack because it was not as severe and the pain went away. After an EKG was performed, it was determined that Daves's pain was gastrointestinal in origin and he was sent home.

On March 25, 1996, Daves awoke at 8:30 a.m. suffering from severe pain that was similar to the pain he suffered with his 1986 heart attack. He believed he was having another heart attack. The pain radiated down his arms and back and he was sweating, restless, anxious, and clutching his chest. When he arrived at the emergency room, Dr. Jim R. Cleary began treating Daves. Daves repeatedly told Cleary that he was having a heart attack, but Cleary believed Daves was either suffering from gallbladder pain or some other gastrointestinal disorder. Daves informed Cleary that his gallbladder had been removed years before and that he was positive he was having a heart attack. Cleary continued to insist that Daves was not having a heart attack, and he thumped on Daves's chest and remarked "its not your ticker." An EKG performed on Daves failed to show any acute changes to his condition. A test performed at 10:30 a.m. showed normal levels of cardiac enzymes.

As the morning progressed, Cleary treated Daves for a gastrointestinal irritation and ran tests to determine if Daves had gallstones in his common bile duct. When nitroglycerin failed to relieve Daves's pain, Cleary administered an anti-anxiety drug which made Daves lose consciousness. Daves does not recall what happened during that time, but remembers that every time he woke up he was in severe pain.

Daves remained in the emergency room and was not admitted into the hospital until 2:30 that afternoon. Dr. Cole, his primary physician, did not see him until 6:00 p.m., at which point a cardiac enzyme test indicated that Daves had suffered from a massive heart attack. Daves began to receive treatment for the heart attack, but by this point severe damage to his heart muscles had already occurred, resulting in congestive heart failure. As a result of his condition, Daves under-

went two heart catheterizations, three thoracentesis procedures in order to drain fluid from his lungs, and also a triple bypass operation. Daves has been disabled since his March 25, 1996 heart attack. His medical bills total $139,967.91.

Daves sued Cleary, the hospital, and his primary physician for medical negligence and personal injury. Jane sued the same defendants for loss of consortium.[1]

Dr. David Maron testified as an expert witness for Daves. He stated that because cardiac enzymes showing heart damage may take up to two hours to manifest, Cleary violated the standard of care for emergency room physicians treating a patient with chest pains when he failed to order repeated EKG's and repeated cardiac enzyme tests to monitor a developing heart attack in time to appropriately treat it. According to Maron, Cleary's failure to adequately check Daves's vital signs, failure to adequately check Daves's medical history regarding gallbladder surgery, failure to request a cardiac consult, and failure to administer any clot-dissolving medication fell below the standard of care for an emergency room doctor.

The jury found for Daves and against Cleary on the medical malpractice claim and awarded him $500,000 in actual damages, but it also found for the primary physician and the hospital on the negligence claim. The jury initially found for Jane on the loss of consortium claim against Cleary, but it awarded her $0 in damages. The circuit court refused to accept the loss of consortium verdict, instructing the jury that it either had to find for Jane and award her at least a nominal amount of damages or find in favor of Cleary. The jury returned with a verdict in favor of Cleary, the hospital, and the primary physician as to Jane's loss of consortium claim. This appeal follows.

## LAW/ANALYSIS

### I. JURY CHARGE

■ Cleary argues the circuit court erred in improperly charging the jury on the standard of care for physicians. We disagree.

---

1. Neither the hospital nor the primary physician is a party to this appeal.

Cleary submitted several requests to charge to the circuit court regarding the standard of care. In four of the requests to charge, Cleary asked the court to charge that Daves was required to show the recognized practices and procedures which would be exercised by a competent practitioner "in the defendant doctor's field of medicine," "in the same specialty," "in the particular branch of healing art in which" the defendant doctor is trained, or of a "particular school of thought," under the same or similar circumstances. Cleary requested that the circuit court charge the jury the specific language that a physician is held to the standard of care of a competent physician in his field of medicine or area of medical specialty. The trial judge denied Cleary's request, stating that he believed the charge he intended to give the jury addressed the "field of medicine" issue, although not as specifically as Cleary would have liked. The judge then read the following charges to the jury regarding the standard of care:

Malpractice, by definition, is the failure to diagnose, treat, or care for a patient in accordance with good proper accepted medical practice resulting in harm to the patient.

. . .

What the law requires is that in the practice of his vocation he will exercise that degree of knowledge, care and skill ordinarily possessed by members of his profession in good standing under the same or similar circumstances.

. . .

He would also be liable, if having the requisite skill, he negligently fails to use it or he is not as careful and diligent in the diagnosis, treatment or care to the extent that he should be, which is to say as a careful and diligent physician of ordinary prudence would have been under the same circumstance.

. . .

In a case such as this, negligence is the failure to do that which an ordinary careful and prudent physician would do under the same circumstances, or it is the doing of that which an ordinary-ordinarily prudent physician would not have done under the existing circumstances.

. . .

> The standard, which I have already told you-the standard is that which I have already told you. Did the physician exercise that degree of knowledge, care and skill possessed by the members of his profession in good standing similarly situated under the same or similar circumstances.
>
> . . .
>
> What are the generally recognized and accepted practices and procedures which would be followed by the average competent practitioners in the defendant's profession under the same or similar circumstances; two, in what manner, if any, he departed from such practices or procedures; and, three, was the defendant's departure from such generally recognized practices and procedures, if any, a proximate cause of the plaintiff's alleged injuries or damages?

After the trial judge gave the jury instructions, Cleary restated his objection that the charges did not include the medical specialty language.

The circuit court must charge the current and correct law to the jury. *McCourt by and through McCourt v. Abernathy,* 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995); *Cohens v. Atkins,* 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct.App.1998). "When reviewing a jury charge for alleged error, an appellate court must consider the charge as a whole in light of the evidence and issues presented at trial." *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App. 2000) (citing *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999)). If the charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Id.* A jury charge is correct if it contains the correct definition and adequately charges the law. *Keaton,* 334 S.C. at 495–96, 514 S.E.2d at 574. The substance of the law is what must be charged, not any particular verbiage. *Id.* at 496, 514 S.E.2d at 574. A circuit court's refusal to give a properly requested charge is reversible error only where the requesting party can demonstrate prejudice from the refusal. *Cohens,* 333 S.C. at 349, 509 S.E.2d at 289.

Several cases have addressed jury charges regarding the applicable standard of care in medical malpractice cases. In *Cox v. Lund,* 286 S.C. 410, 334 S.E.2d 116 (1985), our state

supreme court reviewed whether the standard of care charge given by the circuit court met the requirements of medical malpractice cases. The two prong test requires that the plaintiff:

(1) Present evidence of the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances, AND

(2) Present evidence that the defendant doctor departed from the recognized and generally accepted standards, practices and procedures in the manner alleged by the plaintiff.

*Cox*, 286 S.C. at 414, 334 S.E.2d at 118. The circuit court charged the jury that they could only find the physician guilty of malpractice if they found he "did not possess the degree of skill common to other doctors, or that he failed or was negligent in so exercising such skills in the treatment of a patient." *Cox*, 286 S.C. at 415, 334 S.E.2d at 119. The court further instructed the jury as follows:

In a case of this nature negligence is the failure to do that which an ordinary, careful and prudent physician or surgeon would do under the circumstances shown by the evidence to have existed at the time of the transaction in question, or, it is the doing of that which an ordinary, careful and prudent physician or surgeon would not have done under the same circumstances.

*Id.* at 415–16, 334 S.E.2d at 119. Reviewing these charges, our state supreme court found that the circuit court did not err because the charges "fully and correctly instructed the law of medical malpractice on burden of proof and on all other matters." *Id.*

In *Durr v. McElrath*, 299 S.C. 30, 382 S.E.2d 20 (Ct.App. 1989), this Court addressed the circuit court's refusal to give requested charges that the standard of care for physicians is that "employed by the *profession generally*." Finding that the circuit court correctly refused to give the requested charge, we noted that the degree of skill and care a physician must use in diagnosing a condition is that "which would be exercised by competent practitioners in [the] defendant doctor's field of medicine and not that which would be exercised by the profession generally." *Durr*, 299 S.C. at 32, 382 S.E.2d

at 22. However, we went on to state that the applicable standard of care is determined by "what an ordinary, careful, and prudent physician would have done under the same or similar circumstances." *Id.* at 33, 382 S.E.2d at 22.

Our appellate courts that have more recently addressed the appropriate charge on the standard of care have upheld charges where the jury was asked to consider whether the physician exercised the degree of care and skill ordinarily required by the profession "under similar conditions and in like circumstances." *Keaton,* 334 S.C. at 496, 514 S.E.2d at 574 (reviewing propriety of "hindsight" charge); *cf. Burroughs v. Worsham,* 352 S.C. 382, 403, 574 S.E.2d 215, 225 (Ct.App.2002) (holding there was no prejudicial error where clarifying charge failed to state that the standard of care was that of physicians in the same field of medicine because prior charges addressed the "same field of medicine" language).

Dr. Cleary argues he was clearly prejudiced by the charge because Daves "presented no testimony specifically addressing the standard of care owed by an emergency room physician" and that Daves's only expert witness, Dr. Maron, "acknowledged that he would not hold a doctor in the emergency room to the same standard as a cardiologist in regard to reading EKGs, one of the evaluation tools used in assessing whether pain is cardiac in origin." Our review of the record confirms that Cleary is mistaken as to the standard of care claim. Dr. Maron testified that he was familiar with the standard of care "for a physician evaluating a patient with chest pain in the emergency room setting." He further testified that the standard of care for "initial evaluation and management of a patient in the emergency room" is the same regardless of the specialty of the physician. The reference to the EKG reading is taken out of context. On cross-examination, Dr. Cleary's attorney suggested to Maron that he would not expect an emergency room doctor to "notice half a millimeter change" in an EKG reading. Maron agreed and followed up stating that was something a cardiologist would be expected to recognize, but not an emergency room doctor. This statement in no way conflicts with his earlier testimony regarding the standard of care required of Dr. Cleary.

The charge given by the circuit court in the present case conveyed to the jurors that they must compare Cleary's actions to that of a prudent physician similarly situated under the same or similar circumstances. Admittedly, the charge could have been fuller[2] and specified that the jury should compare Cleary's actions to the standard of a physician in his same field of medicine. Nevertheless, when reviewing the charge as a whole, we find it correctly states the law and was generally free from error. Accordingly, we find no reversible error in the charge.

## II. EXPERT TESTIMONY

Dr. Cleary next argues the circuit court erred in allowing Dr. Maron, a cardiologist, to testify regarding the standard of care for an emergency room physician. We disagree.

■ Cleary moved *in limine* to have Dr. Maron's testimony regarding the standard of care excluded. This motion was denied by the circuit court, and Daves called Dr. Maron to testify at trial. Dr. Maron testified that during his medical training, he had an internship and two years residency in internal medicine, spent two years doing research focused on heart disease, spent a few years at Stanford University teaching internal medicine, and spent the next few years training in cardiology. Although not board certified in emergency room medicine, Dr. Maron is board certified in internal medicine and cardiology. He is an assistant professor at Vanderbilt University's medical school, where he teaches and oversees some medical students who are in the emergency medicine rotation. He periodically sees patients himself in the emergency room. Dr. Maron testified that he was familiar with the standard of care for a physician evaluating a patient in the emergency room complaining of chest pains, and that the standard is the same, regardless of the specialty of the physician.

---

**2.** We think that the better practice is to charge juries in malpractice cases such as this, that in evaluating the conduct of a physician the jury should compare "[the physician's actions] to those of a doctor in the same field of medicine." *Burroughs,* 352 S.C. at 403, 574 S.E.2d at 225.

The qualification of an expert and the admissibility of an expert's testimony are matters within the discretion of the trial judge. *Lee v. Suess,* 318 S.C. 283, 285, 457 S.E.2d 344, 345 (1995). To be considered competent to testify as an expert, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony." *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997). "A medical practitioner's experience teaching and interacting with persons in the applicable specialty are sufficient to support his qualification as an expert." *Id.* at 253, 487 S.E.2d at 598. "A physician is not incompetent to testify merely because he is not a specialist in the particular branch of his profession involved." *Creed v. City of Columbia,* 310 S.C. 342, 345, 426 S.E.2d 785, 786 (1993). Once an expert is qualified, the adequacy of his knowledge goes to the weight of his testimony, not the admissibility. *Id.*

After hearing testimony regarding Dr. Maron's training, teaching credentials, and experiences within the emergency room, the circuit court found that he was qualified to give an expert opinion as to the standard of care for emergency room physicians when a patient presents with a complaint of chest pains. Despite the fact that Dr. Maron is a cardiologist and is not board certified in the field of emergency medicine, we find there was ample evidence to support the circuit court judge's decision to admit his testimony as an expert. Dr. Maron's lack of emergency room expertise went to the weight of his testimony, not to its admissibility. Accordingly, we find no abuse of discretion.

### III. DIRECTED VERDICT/JNOV

Dr. Cleary argues the circuit court erred in failing to grant his motions for directed verdict and a new trial because Daves did not present proper evidence regarding the standard of care and damages proximately caused by Dr. Cleary. We disagree.

Dr. Maron testified that Daves suffered permanent, irreversible damage to his heart due to the heart attack, and that the damage could have been substantially limited had he

received the appropriate treatment when he first appeared in the emergency room complaining of chest pains. Dr. Maron opined that had Daves been given timely intervention to restore blood flow through the blocked artery, "the vast majority of the time those procedures are successful in restoring blood flow and stopping the heart attack." Dr. Maron acknowledged that his testimony did not mean that Daves would have suffered no damage had he had timely intervention, and Maron did not want to speculate on the percentage of difference in damage. He also testified to a reasonable degree of medical certainty that if Daves had received appropriate treatment at the time he first complained of chest pains, Daves would not have developed congestive heart failure.

At the end of the presentation of evidence, Cleary moved for a directed verdict, arguing that Daves failed to establish the standard of care for emergency room physicians and the causal link between Daves's injuries and Cleary's actions. The circuit court denied the motion. After the jury rendered its verdict, Cleary moved for judgment as a matter of law, arguing Daves failed to establish the standard of care for emergency room physicians and that there was no causal link between Cleary's actions and Daves's damages. The court denied that motion also.

In reviewing the denial of motions for directed verdict and JNOV, the evidence and the reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Brady Dev. Co. v. Town of Hilton Head Island*, 312 S.C. 73, 78, 439 S.E.2d 266, 269 (1993); *Evans v. Taylor Made Sandwich Co.*, 337 S.C. 95, 99, 522 S.E.2d 350, 352 (Ct.App.1999). The motion should not be granted where the "evidence yields more than one inference or its inference is in doubt." *Evans*, 337 S.C. at 99, 522 S.E.2d at 352. When considering the motion, neither the appellate court nor the circuit court has authority to "decide credibility issues or to resolve conflicts in the testimony and evidence." *Reiland v. Southland Equip. Serv., Inc.*, 330 S.C. 617, 634, 500 S.E.2d 145, 154 (Ct.App.1998).

In medical malpractice cases, the plaintiff must show through expert testimony that, "in their professional opinion, the injuries complained of most probably resulted from the

defendant's negligence ... [and] when it is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection." *James v. Lister*, 331 S.C. 277, 286, 500 S.E.2d 198, 203 (Ct.App.1998).

As previously discussed, the circuit court found Dr. Maron was qualified as an expert to testify regarding the standard of care for an emergency room physician. Based on Dr. Maron's training and experience, we agree with the circuit court. Because Daves presented Dr. Maron's testimony regarding the standard in this case, we find no error with the circuit court's denial of Cleary's motions for directed verdict and JNOV based on lack of expert testimony.

As to the causation argument, Daves presented expert testimony that he suffered irreparable heart damage leading to congestive heart failure which could have been prevented had he received timely and appropriate treatment. The circuit court found this evidence sufficient to overcome directed verdict and JNOV motions as to causation. Evidence existed to support the circuit court's determination, and we find no abuse of discretion.

## IV. INCONSISTENT VERDICTS

Dr. Cleary argues the circuit court erred in failing to grant his motion for a new trial based on the inconsistency of the verdicts. We disagree.

Jane Daves testified at trial that after her husband's heart attack, he was unable to perform many of the activities he used to be able to perform, to include cutting the grass, raking leaves, tending the garden, washing their cars and taking trips together. She further testified that many of these tasks now fall on her to perform. She also testified that her relationship with Daves changed drastically, and that they no longer had a close, intimate relationship because Daves was afraid of having another heart attack.

The jury returned a verdict in favor of Daves for $500,000 in actual damages. The jury also initially returned a verdict in favor of Jane Daves on the loss of consortium claim, but awarded damages of zero dollars. The circuit court declined

to accept the verdict on the loss of consortium claim, informing the jury that it was an unacceptable verdict. The judge requested the jury clarify whether they intended a verdict for Cleary by giving a zero damages amount or to award some monetary amount to Jane Daves if they intended a verdict in her favor. After further deliberations, the jury returned a verdict in favor of Cleary. Dr. Cleary moved for a new trial based on the inconsistency between the verdict for Daves and the verdict against his wife Jane. The circuit court denied the motion.

Whether to grant a new trial is a matter within the discretion of the trial judge, and this decision will not be disturbed on appeal unless it is unsupported by the evidence or is controlled by an error of law. *Stevens v. Allen,* 336 S.C. 439, 446, 520 S.E.2d 625, 628–29 (Ct.App.1999). Verdicts which are irreconcilably inconsistent should not stand, and a new trial should be granted, because the parties and the judge "should not be required to guess as to what the jury sought to render." *Prego v. Hobart,* 287 S.C. 116, 118, 336 S.E.2d 725, 726 (Ct.App.1985). However, it is the duty of the court to sustain verdicts when a logical reason for reconciling them can be found. *Rhodes v. Winn–Dixie Greenville, Inc.,* 249 S.C. 526, 530, 155 S.E.2d 308, 310 (1967). Nevertheless, it is well settled in South Carolina that claims for personal injuries and for loss of consortium are separate and distinct. *Graham v. Whitaker,* 282 S.C. 393, 397, 321 S.E.2d 40, 43 (1984). Thus, a judgment for the defendant in one action does not automatically bar recovery in the other action. *Id.; Priester v. Southern Ry. Co.,* 151 S.C. 433, 149 S.E. 226 (1929); *Ryder v. Jefferson Hotel Co.,* 121 S.C. 72, 113 S.E. 474 (1922); *see also Burroughs,* 352 S.C. at 405, 574 S.E.2d at 227 (claims for personal injury and loss of consortium are separate and distinct, not derivative of each other, and each litigant is entitled to a verdict based on the law and the evidence). "Although loss of consortium is an independent action, case law has held the right of action does not accrue until the loss of the services, society and companionship of the spouse has actually occurred, which has been defined as the point when the spouse sustained the injuries." *Stewart v. State Farm Mut. Auto. Ins. Co.,* 341 S.C. 143, 156, 533 S.E.2d 597, 604 (Ct.App.2000).

The case of *Craven v. Cunningham*, 292 S.C. 441, 357 S.E.2d 23 (1987) presents facts similar to the instant case. Mr. Craven was injured in an automobile accident caused by Cunningham. Mr. Craven sued to recover for his personal injuries while Mrs. Craven sued to recover for loss of consortium "based on Mr. Craven's inability to perform certain household chores, and for assistance she provided in carrying her husband to the chiropractic sessions." The jury awarded Mr. Craven $6,100 actual damages, but "denied Mrs. Craven damages in her suit." On appeal the supreme court held that the "extent of Mr. Craven's accident-related injuries and post-accident deterioration of the marriage relationship were contested throughout the trial." Thus, the court concluded it was not inconsistent for the jury to award damages to Mr. Craven but not to Mrs. Craven. *Id.* at 442–43, 357 S.E.2d at 24–25.

In the case of *Haskins v. Fairfield Electric Cooperative*, 283 S.C. 229, 321 S.E.2d 185 (Ct.App.1984), *overruled on other grounds by O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993), the jury awarded the husband $30,000 for injuries he sustained in an electrical burn accident, but found the wife "was due no money" on her loss of consortium claim. This court reversed the circuit court's denial of the wife's motion for a new trial on damages only, holding "[i]n Mrs. Haskins' lawsuit, the jury did not find for [the cooperative], and against Mrs. Haskins; rather, the jury merely found she was due no money. By not specifically finding against the cooperative, it is apparent the jury found for Mrs. Haskins on the issue of liability but awarded no damages." This court further held that inasmuch as both lawsuits arose out of the same factual situation "and the record supports the claim the wife had suffered damages, it is error for the trial judge to refuse to grant a new trial [to the wife] on the issue of the wife's damages." *Id.* at 237, 321 S.E.2d at 190–91.

Also instructive is the case of *Guinn v. Millard Truck Lines, Inc.*, 257 Iowa 671, 134 N.W.2d 549, 555–558 (Iowa 1965). There the wife and the minor child were involved in an automobile accident. The wife, minor child and husband each brought a claim against the truck company and driver. The wife and minor child sought damages for personal injuries, the husband sued for property damages and medical expenses. The jury returned a verdict in favor of the wife and minor

child on their claims, and against the husband on his claim. The trucking company and driver appealed arguing the verdicts were inconsistent and therefore the verdict in favor of the wife should be reversed. The Iowa supreme court held that the verdicts in this case were not irreconcilable. The court found that the primary issues in this case were the negligence of the truck driver, and the contributory negligence of the wife. The court found that the jury's verdict for the wife indicted that the jury determined that the truck driver and company were negligent. The court determined that the denial of recovery to the husband was based on his damage claim, and not on the liability issue. The court found that the jury had settled the question of liability fairly and upon sufficient evidence, and therefore, the obvious error in the case was the failure of the jury to award the husband damages. The court rationalized:

[T]hat the issue of the [husband's] damages was so disassociated from other questions that in the interest of justice [the jury's] determination of the [wife's and daughter's] causes should stand. [T]o decide that the jury was not aware the issues because it refused to grant [husband's] damages seems unjust and needless and penalizes the truly innocent parties.

In this case, the jury decided the question of Cleary's liability to both Daves and Jane fairly and upon sufficient facts. The jury's verdict for Daves clearly implies that it found Cleary negligent and there is abundant evidence to support that finding. The error Cleary claims the trial judge made was in not affording him a new trial on the jury's award to Daves because a verdict for Daves is inconsistent with the jury's finding that Cleary is not liable for Jane's loss of consortium claim. Under the facts of this case, the jury could have found sufficient evidence to have awarded Jane damages, if they had believed her testimony. The jury obviously rejected her testimony, as was their prerogative. See *Craven*, 292 S.C. at 443, 357 S.E.2d at 25 ("The credibility of witnesses is for the triers of fact"). Unlike the jury in the *Haskins v. Fairfield Electric* case, it is clear in this matter that when the issue of Jane's entitlement to an award was resubmitted to the

jury, the jury understood that it could not find Cleary was liable to Jane and not award Jane damages.[3]

 Therefore, we hold the verdicts in this case are not irreconcilably inconsistent such that Cleary is entitled to a new trial. Courts must sustain verdicts when a logical reason for reconciling them can be found. *Rhodes v. Winn–Dixie Greenville, Inc., supra.* A jury's verdict should be affirmed if it is possible to do so and carry into effect the jury's clear intention. *New York Carpet World v. Houston,* 292 S.C. 101, 103, 354 S.E.2d 924, 925 (Ct.App.1987).

## CONCLUSION

Based on the foregoing, the rulings by the circuit court and jury's verdicts are

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.

<hr>

---

3. We hasten to observe that this case should be distinguished from the case where the jury awards loss of consortium damages to a spouse, but denies damages to the allegedly injured party. In such a case, a new trial is required. *See* 41 Am.Jur.2d *Husband and Wife* § 258 (1995) *citing Smith v. Ridgeway Chemicals, Inc.,* 302 S.C. 303, 395 S.E.2d 742 (1990) ("Generally, a plaintiff spouse's claim for loss of consortium fails if the impaired spouse's claim fails, whether the claim is considered separate and independent from the impaired spouse's claim or derivative in nature.")