THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Amy N. Fennell and Thomas Lakelan Fennell, Appellants,
 
 
 

v.

 
 
 
 Lilly S. Filler, M.D., and Women Physicians Associates OB/GYN P.A., Respondents.
 
 
 

Appeal From Richland County
James R. Barber, III, Circuit Court Judge

Unpublished Opinion No. 2006-UP-039
Heard December 7, 2005  Filed January 18, 2006

AFFIRMED

 
 
 
 Charles L. Henshaw Jr., of Columbia, for Appellants.  
 Andrew F. Lindemann and Julius W. McKay, II, both of Columbia, for Respondents.
 
 
 

PER CURIAM:  Amy and Thomas Fennell appeal the trial courts refusal to give a subsequent treating physician charge following a jury verdict for the defendants in this medical malpractice action.  We affirm.  
FACTS
 In the summer of 1998, Amy Fennell began seeing Dr. Lilly Filler, an obstetrician and gynecologist, during Mrs. Fennells first pregnancy.  On February 9, 1999, Dr. Filler induced delivery, and Mrs. Fennell gave birth to a healthy girl.  A few minutes after the birth, the placenta and other portions of afterbirth were delivered.  At that point, Mrs. Fennell began to hemorrhage.  Dr. Filler concluded Mrs. Fennells bleeding was caused by a weak or tired uterus, also called uterine atony.  Mrs. Fennell was discharged from the hospital three days later.  
After returning home from the hospital, Mrs. Fennell began to experience excessive bleeding and pain in the abdominal area.  In April, Dr. Filler performed an ultrasound and saw pieces of afterbirth or retained products of conception attached to Mrs. Fennells uterus.  The next day, Dr. Filler performed a procedure known as a D&C to remove the retained products of conception.  Dr. Filler removed two pieces of retained products of conception, each about the size of a persons palm, that were described as calcified and infected.  
Approximately two months after the D&C, Dr. Donald Fylstra, a gynecologist at the Medical University of South Carolina, examined Mrs. Fennell and found no measurable endometrium in her uterus.[1]  Dr. Fylstra and Dr. Robert Kaufmann, a fertility specialist, administered hormones to Mrs. Fennell in an attempt to regrow her endometrial lining.  Some of Mrs. Fennells endometrium returned, and there is a dispute as to whether it was enough to allow her to become pregnant again.  Dr. Fylstra and Dr. Kaufmann advised Mrs. Fennell that there was little chance she would become pregnant again and explained that a hysterectomy could relieve the pain she was experiencing.  Mrs. Fennell made the decision to undergo the procedure.  
In their medical malpractice action against Dr. Filler and Women Physicians Associates OB/GYN P.A., the Fennells claimed Dr. Filler breached the applicable standard of care in negligently failing to remove the products of conception from Mrs. Fennells uterus after the birth. The Fennells claimed this failure was the proximate cause of the necessity for the D&C procedure and resulting damage to Mrs. Fennells endometrium.  
A dispute also arose during the trial as to whether Mrs. Fennell had a functioning uterus at the time of her hysterectomy and whether enough had been done to medically justify the hysterectomy.  Dr. Fillers expert, Dr. Mark Salley, testified to a reasonable degree of medical certainty that Mrs. Fennell could have become pregnant again had she not been given a hysterectomy.  
Because of this dispute, during trial the Fennells requested a subsequent treating physician charge be given that would include the following language: 

 If an injured person uses ordinary care in selecting a subsequent physician for treatment of his or her injury, the law regards any aggravation of the original injury resulting from the negligent act of the subsequent physician as a part of the immediate and direct damages which naturally flow from the original injury.  

The trial court declined to include the requested charge in its jury instructions.  The trial court indicated its general charge on proximate cause and foreseeability was sufficient to instruct the jury on the principle of law contained in the requested charge.  No specific objection was raised to the general charge on proximate cause and foreseeability or the charges concerning damages as given by the trial court.  
The jury returned a verdict for Dr. Filler and her medical practice.  The Fennells were granted ten days to file post-trial motions.  The Fennells then filed a motion for a new trial that was subsequently denied.  This appeal followed.  
STANDARD OF REVIEW
When instructing the jury, the trial court is required to charge only the current and correct law of South Carolina.  Cohens v. Atkins, 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct. App. 1998).  The substance of the law is what must be instructed to the jury, not any particular verbiage. . . .  A jury charge that is substantially correct and covers the law does not require reversal.  Burroughs v. Worsham, 352 S.C. 382, 392, 574 S.E.2d 215, 220 (Ct. App. 2002).  When reviewing a jury charge for alleged error, the appellate court must consider the charge as a whole in light of the evidence and issues presented at trial.  Daves v. Cleary, 355 S.C. 216, 224, 584 S.E.2d 423, 427 (Ct. App. 2003).  To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well.  Cohens, 333 S.C. at 349, 509 S.E.2d at 289 (quoting McCourt v. Abernathy, 318 S.C. 301, 306, 457 S.E.2d 603, 606 (1995)).  Furthermore, it is not error to refuse a request to charge when the substance of the request is included in the general instructions.  Brown v. Stewart, 348 S.C. 33, 53, 557 S.E.2d 676, 686 (Ct. App. 2001).  
LAW/ANALYSIS
The Fennells contend the trial court erred in failing to instruct the jury with a subsequent treating physician charge.  We disagree. 
As a threshold matter, Dr. Filler contends this issue has not been preserved for appeal because the Fennells failed to move for a new trial on the basis of the requested jury instruction.  Instead the Fennells motion for a new trial was limited to relief under the thirteenth juror doctrine and the renewal of a mistrial motion made after Dr. Filler and the Fennells expert witness, Dr. March, rendered medical assistance to a juror in the courtroom.  Neither of the grounds raised in the motion for a new trial have been pursued on appeal.  
However, post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court, but not ruled upon.  Wilder Corp. v. Wilke, 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998); see also Hubbard v. Rowe, 192 S.C. 12, 19, 5 S.E.2d 187, 189 (1939) (finding that in matters of appeal, so far as it appears, all that is required is that the questions presented for decision must first have been fairly and properly raised in the trial court and passed upon by that court).  Furthermore, when a party requests a jury charge and after an opportunity for discussion the trial court declines to give the charge, it is unnecessary, in order to preserve the point on appeal, to renew the request or object to the failure to give the charge at the conclusion of the jury instructions.  Keaton v. Greenville Hosp. Sys., 334 S.C. 488, 494, 514 S.E.2d 570, 573 (1999) (citing State v. Johnson, 333 S.C. 62, 64 n.1, 508 S.E.2d 29, 30 n.1 (1998)); Nedrow v. Pruitt, 336 S.C. 668, 677, 521 S.E.2d 755, 760 (Ct. App. 1999).  In the instant case, a full discussion was held concerning the requested charge.  Each party was allowed to make arguments concerning the addition of the charge, and the trial court ruled on its use.  In addition, the Fennells reargued the issue after the jury had been charged, though the record is incomplete in this regard.  
Even though this issue is preserved for appeal, it fails on its merits.  The Fennells contend the failure to give the requested instruction was harmful because the jury did not know Dr. Filler could be liable for the harm inflicted by the subsequent treating physicians.  Several cases have concluded that the inclusion of an instruction such as the one requested is proper.  See Howard v. State Farm Mut. Auto. Ins. Co., 316 S.C. 445, 450-51, 450 S.E.2d 582, 585 (1994) (concluding that the trial judge properly gave instruction because damages by a subsequent treating physician would have arisen from accident as defined in PIP policy); Graham v. Whitaker, 282 S.C. 393, 399, 321 S.E.2d 40, 44 (1984) (finding that the trial judge properly submitted the issue of proximate cause to the jury where plaintiff fell in her physicians office and was damaged by the negligence of a subsequent treating physician during a surgical procedure); Payton v. Kearse, 319 S.C. 188, 211, 460 S.E.2d 220, 233-34 (Ct. App. 1995), revd on other grounds, 329 S.C. 51, 495 S.E.2d 205 (1998) (determining that the trial judge properly submitted the issue of damages caused by a subsequent treating physician to the jury).  However, none of these cases require such a charge.
The trial court in the instant case properly instructed the jury on the issue of proximate cause.  Instead of charging the Fennells Request No. 1, the trial court stated that the same goal would be accomplished by charging proximate cause and foreseeability.  The trial court interspersed throughout its jury charge the following: 

 If by the lack of the required skill a physician fails to properly treat her patient so that the patient is injured or the condition is made worse than it would have been otherwise, then the physician will be liable for any injury proximately caused to the patient. . . . 
 Forseeability of some injury from a negligent act or omission is a requisite to its [sic] being a proximate cause of the injury for which recovery is sought.  The standard by which forseeability is determined is by looking to the natural and probable consequences of the complained act.
 The defendant may be held liable for anything that appears to have been a natural and probable consequence of the defendants negligence.
 Actual damages include compensation for all injuries which are naturally the proximate result of the alleged wrongful conduct of the defendant.

Considering the charge as a whole, these jury instructions clearly indicate that all injuries foreseeably flowing from any negligent acts of Dr. Filler are to be attributed to her.  The instruction as given embodies the same legal theory as that found in the requested instruction even though it may be somewhat less specific.  
Even assuming that the refusal to give the requested charge was error, it was not prejudicial.  Because the jury returned a general verdict for Dr. Filler with no damages, the only conclusion to be drawn is that the jury found Dr. Filler had not been negligent.[2]  To reverse a case for a failure to include a jury instruction pertaining solely to damages when no negligence was found would be improper.  
CONCLUSION
For the reasons stated herein, the trial courts decision is 
AFFIRMED.  
STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.

[1]  Functional endometrium is necessary to accept, nourish, and grow a fertilized egg into a baby.  
[2] The Fennells contended at oral argument that they only sought damages for Mrs. Fennells loss of childbearing capacity.  Consequently, they argue, the jury could have awarded a defense verdict because it did not understand that Dr. Filler could be held liable for those particular damages.  The record reveals, however, that Mrs. Fennells physical pain, resulting from the retained products of conception and the D&C procedure, was also a possible element of damages.  Under these circumstances, it appears that a defense verdict was necessarily premised on a finding of no negligence.