22358

Annie Reeves COX, as Administratrix of the Estate of Paul Leslie Cox, Deceased, Respondent, v. Dr. Carl McHenry LUND, M.D., Appellant.

(334 S. E. (2d) 116)

Supreme Court

*H. Grady Kirven* of *Warkins, Vandiver, Kirven, Gable & Gray*, Anderson, *for appellant.*

*Michael Parham* of *Abrams, Bowen & Parham*, Greenville, *for respondents.*

Heard May 21, 1985.

Decided Aug. 8, 1985.

CHANDLER, Justice:

Dr. Carl McHenry Lund (Dr. Lund) appeals from medical malpractice jury verdicts awarded Respondent Administratrix (plaintiff Wife) for the death of her husband, Paul Leslie Cox (Cox), in actions brought pursuant to the survival and wrongful death statutes and tried together.

We affirm.

## FACTS

On February 14, 1980, Cox was admitted to Anderson Memorial Hospital complaining of pain in his upper abdomen, for which Dr. Lund and other physicians undertook to diagnose the cause.

On February 28, Dr. Lund ordered a barium x-ray study, which revealed the presence of a polyp in the colon. Because of the possibility that the polyp was cancerous Dr. Lund, with Cox's permission, decided to carry out a relatively new exploratory procedure known as colonoscopy.

Colonoscopy involves the insertion into the rectum and through the colon of a tubular instrument called a colonoscope, on the front end of which is a light that enables the physician to make direct visual observation of polyps or other abnormalities in the colon. The colonoscope is also capable of excising and retrieving small polyps for laboratory analysis. When accomplished successfully, the procedure substitutes for traditional radical exploratory surgery which requires long periods of hospitalization.

All medical witnesses at trial emphasized that colonoscopy should be commenced *only* after verification that the bowel is free of feces or other matter obstructing visibility and, further, that the procedure be aborted immediately if visibility becomes obscured or resistance to advancement of the colonoscope occurs.

These imperatives are mandated by the danger and risk of perforation of the colon with consequent spilling into the abdominal cavity of contamination-causing foreign matter.

After disclosure of the polyp on the February 28 barium x-ray Dr. Lund scheduled a colonoscopy examination of Cox for March 10. According to Dr. Lund he abandoned the procedure when he observed "muddy water" and "pools of

liquid stool." He testified "... and I quit because even the liquid at that stage, there was too much volume to do anything with it. We sent him back to the floor."

The colonoscopy was resumed at 1:20 p.m. the following day, March 11. At 1:35 the procedure was again aborted, but, unfortunately, not before a perforation of the colon had occurred. Dr. Lund testified, "The second attempt to engage and very gently turn the corner and muddy water again and I quit, — backed out. And I knew I wasn't going to do a polypectomy (excision of the polyp) in that setting anyway." [Parenthesis supplied.]

Dr. Lund, sensing from the distention of Cox's abdomen that a complication had occurred, promptly obtained x-rays which revealed a perforation of the colon. He immediately called in Dr. Donald Roberts, a general surgeon, to repair the puncture.

In the course of this surgery it was necessary that Dr. Roberts, by irrigation and suction, remove from the abdominal cavity feces, liquid stool and residual barium which had spilled into it from the colon.

Thereafter, Cox's condition, despite intensive antibiotic therapy, deteriorated and on April 12 he died from complications of the emergency surgery which, in turn, was necessitated by the colon perforation.

## ISSUES

Dr. Lund contends the trial judge:

(1) Improperly instructed the jury as to plaintiff's burden of proof on the issue of negligence in a malpractice suit.

(2) Improperly included in his jury charge the "common knowledge" exception.

(3) Improperly instructed on the meaning of circumstantial evidence as to the issues in this case.

(4) Improperly denied his *n.o.v.* and new trial motions, made on the ground that plaintiff's expert testimony was based upon facts not substantiated by the evidence.

## I. BURDEN OF PROOF INSTRUCTION

■ Dr. Lund bases this contention upon the alleged failure of the plaintiff Wife to present evidence satisfying the two prong test in medical malpractice suits, to wit, that the plaintiff must:

(1) Present evidence of the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances, AND

(2) Present evidence that the defendant doctor departed from the recognized and generally accepted standards, practices and procedures in the manner alleged by the plaintiff.

There was no dispute in the medical testimony of both parties that colonoscopy should not be performed unless the colon and bowel are first evacuated of feces or other matter. A critical issue in the trial, therefore, was the factual determination of the condition of Cox's bowel and colon at the commencement of the procedure.

Dr. David Falkenstein, an expert in gastroenterology and a witness for the plaintiff Wife, testified that Cox's colon was totally unprepared and, accordingly, colonoscopy should not have been carried out in a non-urgent situation:

Q. And from what standard did he deviate?

A. Upon my review of the chart, and in an analysis of this perforation, and from all I've read here in the materials in the chart, *I believe that Dr. Lund deviated from well-accepted standards of care* in that he persisted to attempt examination of the colon in a nonurgent situation when it was established, that, again, *the colon was totally unprepared for the examination to be contemplated done on that morning.* [Emphasis supplied.]

Dr. Falkenstein's opinions were based upon his study of relevant medical charts and an x-ray of Cox taken on March 17, six days after the March 11 perforation and emergency surgery. He testified that the March 17 x-ray showed that on March 11 not only feces, but also barium, residual from the

earlier barium x-ray study of February 28, was present in Cox's bowel:

> A. On March 17th, 1980 there remains a considerable quantity of residual barium in the bowel and in my review of the chart very carefully *that barium had been put there way back on February 28th* when a barium enema examination was performed.
> ... In my mind and my opinion, and with reasonable assuredness, *on March 11th, 1980 there was both feces and yet even more barium present in the bowel;* barium that should have been immediately recogniz-. able certainly under fluoroscopic examination because you brought that up and referred me to that previous testimony of the radiologist. [Emphasis supplied.]

Moreover, and supporting Dr. Falkenstein's testimony, Dr. Edward Warren, a specialist in radiology, testified that the presence of barium in Cox's colon could have been readily discovered by simply scanning the abdomen with a fluoroscope. Failure to rule out its presence was evidence of negligence for, in the words of Dr. Falkenstein, "Barium is the endoscopist's enemy."

The foregoing witness testimony and documentary evidence constitute a record addressing both prongs of the proof or evidence requirements in medical malpractice actions in South Carolina and other state jurisdictions, as well as courts in the Federal system.

Upon that record the trial judge in his charge first defined the meaning of negligence as it relates to tort liability generally. He then instructed that, in order to reach a verdict against Dr. Lund in this malpractice action, the jury would have to find "by the greater weight of the evidence that the physician did not prossess the degree of skill common to other doctors, or that he failed or was negligent in so exercising such skills in the treatment of a patient." Further, he instructed:

> In a case of this nature negligence is the failure to do that which an ordinary, careful and prudent physician or surgeon would do under the circumstances shown by the evidence to have existed at the time of the transac-

tion in question, or, it is the doing of that which an ordinary, careful and prudent physician or surgeon would not have done under the same circumstances.

The jury charge, throughout, fully and correctly instructed the law of medical malpractice on burden of proof and on all other matters.

## II. THE "COMMON KNOWLEDGE". EXCEPTION: ERROR TO INCLUDE IN THE CHARGE?

The trial judge charged the jury that, generally, expert testimony is required to establish liability in medical malpractice. He then instructed:

However, this exception exists to the rule just stated as to expert witnesses when it is common knowledge that danger is involved in certain conditions or to take certain precautionary measures.

Expert testimony is not required to establish such a fact, but it may be judicially noted as a part of that fund of common knowledge shared by other of our fellow citizens generally.

Dr. Lund contends that it was error to include in the charge this language, commonly referred to as the "common knowledge" exception. We disagree.

In *Green v. Lilliewood*, 272 S. C. 186, 192, 249 S. E. (2d) 910 (1978), our Court, citing *Jarboe v. Harting*, 397 S. W. (2d) 775 (Ky. 1965), recognized the requirement, generally, of expert testimony in medical malpractice, but also noted with approval the "common knowledge" exception:

Admittedly, the general rule is that expert testimony is required in a malpractice case to show that the defendant failed to conform to the required standard, which is, such reasonable and ordinary knowledge, skill and diligence as physicians in similar neighborhoods and surroundings ordinarily use under like circumstances ... However, ... there is an *exception to the rule in situations where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts.* [Emphasis supplied.]

A question of fact in sharp dispute was Dr. Lund's ability to maintain visual observation as the colonoscope proceeded through the colon.

Dr. Lund testified that the colon was properly prepared so that visibility was adequate; Dr. Falkenstein testified that the colon was "totally unprepared;" Dr. Warren, radiologist, testified that the March 17 x-ray disclosed the presence of liquid stool, feces and barium.

Accordingly, it was for the jury to resolve the factual issues of (1) colon preparedness and (2) visibility. If the jury found that the colon was not properly prepared, so that Dr. Lund was unable to see adequately and, notwithstanding, advanced the colonoscope, a finding of negligence clearly would fall within the "common knowledge" exception. Expert testimony is not required to establish negligence when the act complained of was done in the face of a proscription known to the actor. Dr. Lund himself recognized the proscription, for he testified:

> You don't advance the instrument *when you can't see.* [Emphasis supplied.]

Based upon the record the "common knowledge" exception was properly included in the jury instruction.

## III. THE CHARGE ON CIRCUMSTANTIAL EVIDENCE

Dr. Lund contends that the jury was improperly instructed "as to the meaning of circumstantial evidence and its applicability to the issues of this case." In his brief he concedes that this contention is closely related to issue Number II on inclusion of the "common knowledge" exception in the jury charge.

This Court in numerous decisions has laid down for bench and bar the extent to which circumstantial evidence may be relied upon in proof of facts.

> In civil actions every other reasonable conclusion (as required in the criminal law) need not be excluded; proof of circumstances warranting a given inference is sufficient in such cases. *Leek v. New South Express Lines,* 192 S. C. 527, 534, 7 S. E. (2d) 459 (1940). [Parenthesis supplied.]

It is a well recognized rule that an issue may be proved by circumstantial evidence. But for circumstantial evidence to be sufficient to warrant the finding of a fact, the circumstances must lead to the conclusion with reasonable certainty, and must have sufficient probative value to constitute the basis for legal inference, and not mere speculation. The facts and circumstances shown should be reckoned with in the light of ordinary experience, and such conclusions deduced therefrom as common sense dictates. *Holland, et al v. Georgia Hardwood Lumber Co., et al,* 214 S. C. 195, 204, 51 S. E. (2d) 744 (1949).

When the entire jury charge is construed and considered as a whole, as held in *Waldrup v. Metropolitan Life Insurance Company,* 274 S. C. 344, 346, 263 S. E. (2d) 652 (1980), that portion pertaining to circumstantial evidence here was properly instructed.

### IV. DENIAL OF N.O.V. AND NEW TRIAL MOTIONS

Plaintiff Wife contends that the exceptions upon which these questions are based were not properly raised and preserved before the trial, and that Section 6 of Supreme Court Rule 4 has not been complied with.

It is not necessary to determine this issue. Considering the exceptions as proper we find Dr. Lund's contention that the plaintiff Wife's expert testimony was based upon facts not substantiated by the evidence to be without merit.

The evidence upon which Dr. Falkenstein based his testimony is both clear and abundant in the record.

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and HARWELL, JJ., concur.