617 S.E.2d 725

**Willie May DAVID and J.D. David, Appellants,**

v.

**McLEOD REGIONAL MEDICAL CENTER, Dr. Ken Brusett, Individually, Pee Dee Cardiovascular Surgeons, Pee Dee Pathology, and Dr. H.K. Habermeier, Individually, Respondents.**

No. 26020.

Supreme Court of South Carolina.

Heard Feb. 1, 2005.

Decided Aug. 1, 2005.

Rehearing Denied Sept. 13, 2005.

Eduardo K. Curry and Carl B. Grant, both of Curry Counts & Huger, of Charleston; and Jayne G. Helm, of Mt. Pleasant, for Appellants.

J. Rene Josey and Tiffni D. Shealy, both of Turner Padget Graham & Laney of Florence; Marian H. Lee and Mark W. Buyck, Jr., both of Wilcox Buyck & Williams of Florence; and Robert H. Hood, D. Nathan Hughey, and Deborah H. Sheffield, all of Hood Law Firm of Charleston, for Respondents.

Chief Justice TOAL:

The underlying case is a medical malpractice action. Willie Mae David (Appellant) appeals the trial court's order granting

summary judgment in favor of Respondents.[1] This case was certified from the court of appeals pursuant to Rule 204(b), SCACR. Because Respondents have filed three separate briefs, we recognize that some issues may not apply to all of the Respondents. Nevertheless, we affirm the trial court's order as to all Respondents.

## FACTUAL/PROCEDURAL BACKGROUND

Appellant's family doctor found a lesion on the lower lobe of Appellant's left lung. Appellant was referred to Pee Dee Cardiovascular Surgeons for evaluation and then admitted to McLeod Regional Medical Center on March 3, 1998, to undergo a biopsy and possible surgery to extract the lesion.

During the biopsy, Dr. Ken Brusett extracted a sample of the lesion for testing.[2] Dr. H.K. Habermeier, a pathologist, examined the sample and provided an intra-operative preliminary diagnosis of "probable pulmonary blastoma," which is a rare form of lung cancer. As a result of this preliminary diagnosis, Dr. Brusett decided to remove the lower lobe of Appellant's left lung while Appellant was still anesthetized and unconscious. A final pathology report, issued three days after the surgery, concluded that the lesion was not cancerous, but rather, pulmonary endometrioma.[3]

Appellant filed an action alleging medical malpractice, claiming that she suffers from several ailments as a result of the surgery, including chest and back pain, shortness of breath, and anxiety.

Appellant named the following parties as defendants: (1) the hospital where the surgery took place (McLeod Regional Medical Center); (2) the thoracic surgeon who conducted the surgery (Dr. Brusett); (3) Dr. Brusett's practice group (Pee Dee Cardiovascular Surgeons); (4) the pathologist who provid-

---

1. Respondents filed three separate briefs in the following groups: (1) McLeod Regional Medical Center, (2) Dr. Brusett and Pee Dee Cardiovascular Surgeons, and (3) Dr. Habermeier and Pee Dee Pathology.

2. The procedure conducted is known as a "wedge biopsy," which requires a surgeon to actually make an incision to extract a specimen of the suspicious tissue.

3. Endometrioma is the irregular growth and hardening of tissue known as the endrometrius, which usually occurs in the lining of the uterus.

ed the preliminary diagnosis of "probable pulmonary blastoma" (Dr. Habermeier); and (5) Dr. Habermeier's practice group (Pee Dee Pathology).

Respondents made three separate motions for summary judgment,[4] which the trial judge granted in favor of Respondents. Appellant now raises the following issues for review:

I.  Did the trial court err in granting Respondents' motions for summary judgment?

II. Did the trial court err in holding that McLeod Regional Medical Center was not vicariously liable for Appellant's alleged damages?

### LAW/ANALYSIS

### I. Summary Judgment

■ Appellant argues that the trial court erred in granting summary judgment in favor of Respondents.[5] We disagree.

■ When reviewing an order granting summary judgment, the appellate court applies the same standard applied by the trial court. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP.

---

**4.** Respondents' summary judgment motions were grouped in the same manner in which Respondents submitted briefs to this Court.

**5.** Appellant argues that the affidavit of Dr. Frist creates an issue of fact. In the affidavit, Dr. Frist opines that the treating pathologist who diagnosed Appellant (Dr. Habermeier) and the treating surgeon (Dr. Brusett) were negligent for failure to properly communicate about Appellant's diagnosis. Initially, Appellant named only one expert in her response to interrogatories: Dr. Hossein Tirgan, an oncologist in the state of New Jersey. Dr. Tirgan, by way of affidavit and deposition, provided an opinion that all of the Respondents were negligent in some manner. However, because Appellant does not mention any of Dr. Tirgan's expert testimony or other allegations of negligence by Dr. Frist in her brief, we must assume Appellant has abandoned her argument that these additional expert opinions provide a genuine issue of material fact for which an order granting summary judgment may be overturned. *See State v. Hornsby*, 326 S.C. 121, 125, 484 S.E.2d 869, 871 (1997) (holding an issue not argued in the brief is deemed abandoned and precludes consideration on appeal). Therefore, we focus solely on Dr. Frist's affidavit to determine whether summary judgment was proper.

In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Fleming v. Rose*, 350 S.C. 488, 493–494, 567 S.E.2d 857, 860 (2002).

■ As the trial court recognized, the rules of civil procedure dictate whether or not an affidavit establishes an issue of fact sufficient to defeat a motion for summary judgment. Rule 56(e), SCRCP provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to matters stated therein." Rule 56(e), SCRCP.

■ In a medical malpractice action, a plaintiff must provide the following to establish an issue of fact:

(1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances; and (2) the defendants departed from the recognized and generally accepted standards.

*Pederson v. Gould*, 288 S.C. 141, 143–44, 341 S.E.2d 633, 634 (1986); *Cox v. Lund*, 286 S.C. 410, 414, 334 S.E.2d 116, 118 (1985). In addition, the plaintiff must show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. *Green v. Lilliewood*, 272 S.C. 186, 193, 249 S.E.2d 910, 913 (1978).

■ A physician commits malpractice by not exercising that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances. *Durham v. Vinson*, 360 S.C. 639, 650–51, 602 S.E.2d 760, 766 (2004). To create a question of fact in a medical malpractice case, the plaintiff must provide expert testimony to establish both the required standard of care and the defendant's failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge, so that no special learning is required to evaluate the conduct of the defendant. *Pederson*, 288 S.C. at 143, 341 S.E.2d at 634.

In the present case, Appellant relies solely on the affidavit of pathologist Dr. Brian Frist as creating a genuine issue of material fact.[6] The trial court ruled that Dr. Frist's affidavit failed to establish that he is familiar with the standard of care from which the Respondents allegedly deviated. We agree.

We hold that the trial court properly found Dr. Frist's affidavit did not create a question of fact as to the alleged malpractice of Dr. Brusett and Pee Dee Cardiovascular. In his affidavit, Dr. Frist's sole opinion as to Dr. Brusett's alleged malpractice is that Dr. Brusett failed "to make sure that he communicated to the pathologist his thoughts for treatment, so that the pathologist was aware of the treatment plan of the surgeon."

First, Dr. Frist incorrectly relies on the assumption that the pathologist would have diagnosed Appellant's tumor differently had Dr. Brusett "communicated his thoughts for treatment" before Appellant's tumor was tested. Dr. Frist's affidavit fails to explain how Brusett's post-diagnosis treatment would have affected the pathologist's initial diagnosis of the tumor. As a result, there is no evidence that Dr. Brusett's failure to communicate Appellant's possible treatment options with the pathologist was the proximate cause of Appellant's injuries. The dissent asserts that had the pathologist been aware that Dr. Brussett intended to immediately remove the affected portion of the lung upon a diagnosis of pulmonary blastoma, then the pathologist *might* have qualified or sought to confirm his preliminary diagnosis. The dissent's argument disregards the necessity that a surgeon be able to rely upon inter-operative diagnoses to determine a patient's proper treatment. Moreover, the ruling argued by the dissent would set the precedent that a speculative hypothetical may serve as the standard of care in an action for medical malpractice.

Second, Appellant provides no evidence that her expert, Dr. Frist, is familiar with the standard of care that Dr. Brusett allegedly breached. Dr. Frist is a pathologist not a cardiothoracic surgeon. Nothing in Dr. Frist's affidavit, or in the

6. Appellant named Dr. Frist as an expert only two days before the summary judgment hearing. Respondents had no opportunity to depose Dr. Frist. As a result, the only evidence that the trial court had to consider was Dr. Frist's affidavit.

record, suggests it was unreasonable for Dr. Brusett to extract the lesion after receiving a diagnosis of "probable pulmonary blastoma."

Third, we find that Dr. Frist's affidavit failed to establish that he is familiar with the standard of care that Dr. Habermeier and Pee Dee Pathology allegedly breached. According to his affidavit, Dr. Frist is board certified in anatomical and clinical pathology and is the Chief Medical Examiner for Cobb County Georgia. The affidavit, however, does not provide that Dr. Frist is familiar with the standard of care for interoperative diagnoses. While we may infer that Dr. Frist is familiar with the standard of care a pathologist must exercise as a medical examiner, we cannot infer that every pathologist is familiar with the standard of care for every known caveat of pathology.

■■ The dissent contends that this ruling requires that for a doctor to be qualified as an expert, the doctor must practice in the same sub-specialty as the defendant doctor. We disagree. A doctor need not practice in the particular area of medicine as the defendant doctor to be qualified to testify as an expert. *Creed v. City of Columbia,* 310 S.C. 342, 345, 426 S.E.2d 785, 786. (1993). However, regardless of the area in which the prospective expert witness practices, he must demonstrate to the court that he is familiar with the applicable standard of care for the medical procedure under scrutiny before he may be qualified as an expert witness. Again, despite Dr. Frist's qualifications, his affidavit does not provide that he is familiar with the standard of care he alleges was breached. Therefore, we hold that the trial court did not err in granting summary judgment in favor of Respondents, Brusett, Pee Dee Cardiovascular, Habermeier and Pee Dee Pathology.

## II. Liability of McLeod Regional Medical Center

Appellant argues that McLeod Regional Medical Center (hospital) had a nondelegable duty to provide competent pathology care to Appellant and therefore was vicariously liable for Dr. Habermeier's preliminary misdiagnosis that resulted in unnecessary surgery. Because we hold that the trial court properly granted summary judgment in favor of Dr. Haber-

meier and Pee Dee Pathology, this issue is moot. *See Rook-ard v. Atlanta & C. Air Line Ry. Co.*, 84 S.C. 190, 192, 65 S.E. 1047, 1048 (1909) (a judgment on the merits in favor of the agent is a bar to an action against the principal for the same cause because the principal's liability is predicated upon the agent's liability).

## CONCLUSION

For the foregoing reasons, we affirm summary judgment in favor of Respondents.

MOORE and WALLER, JJ., concur. PLEICONES, J., dissenting in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES dissenting:

I respectfully dissent from the majority's decision to affirm the grant of summary judgment to the Respondent doctors and their practices, but join the decision to affirm the grant to Respondent McLeod. The majority cites three reasons why Dr. Frist's affidavit was insufficient to establish the standard of care for purposes of summary judgment. As explained below, I find the affidavit adequate.

First, the majority contends that Dr. Frist did not explain how Dr. Brusett's treatment plan would impact Dr. Habermeier's diagnosis. As I understand the affidavit, the assertion is that if the pathologist had been aware that Dr. Brusett intended to immediately remove the affected portion of the lung if the intra-operative diagnosis was pulmonary blastoma, then Dr. Habermeier might have qualified or sought to confirm his preliminary diagnosis.[7] In my opinion, there is no proximate cause gap in the affidavit.

Second, the majority holds that there is nothing in the affidavit to suggest that it was unreasonable for Dr. Brusett to have removed part of the lung upon receiving the blastoma diagnosis. As I understand the Appellants' theory, however,

---

7. Specifically, Dr. Frist asserts Dr. Habermeier deviated from the standard of care, in part, by failing "to properly communicate appropriately to the surgeon his pathological diagnosis and thoughts, to the rareness of his findings, so that the diagnosis could be used for the proper treatment of the patient at that moment."

they allege a deviation from the standard of care in the pre-operative communications between the surgeon and the pathologist, not in the surgical decision made upon receipt of the pathology report. In my opinion, this is not a basis upon which to uphold the grant of summary judgment.

Third, the majority holds that Dr. Frist's affidavit is insufficient because while Dr. Frist is a licensed pathologist board certified in Anatomical and Clinical Pathology, nothing in his affidavit states that he is familiar with the standard of care for intra-operative diagnoses. We have here-to-fore not required that medical experts practice in the same area in which they are testifying. *E.g.*, *Creed v. City of Columbia*, 310 S.C. 342, 345, 426 S.E.2d 785, 786 (1993)("A physician is not incompetent to testify merely because he is not a specialist in the particular branch of his profession involved"). I do not join the majority's decision to require an expert's affidavit to assert expertise in all the specific procedures at issue in the case, but would hold that Dr. Frist's affidavit indicating proficiency in the specialty involved, coupled with the statement "It is my opinion, to a reasonable degree of medical certainty, that each of these Defendants deviated from the acceptable standard of care and were negligent ... in the following particulars ...." is sufficient to establish that he is familiar with the standard of care.

In my opinion, the trial court erred in holding that Dr. Frist's affidavit did not demonstrate that he was familiar with the applicable standard of care. I would therefore reverse the order granting Respondent Brusett and Habermeier summary judgment. I would affirm the grant of summary judgment to McLeod, however, because there is simply no evidence in this record that the Appellants looked to the hospital rather than to individual doctors for Mrs. Davis's care. *Osborne v. McLeod Reg. Med. Center*, 346 S.C. 4, 550 S.E.2d 319 (2001) (in order to hold hospital vicariously liable for staff negligence, plaintiff must present evidence that she looked to the hospital for care).

BURNETT, J., concurs.