THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Mary S. Turbeville, as
 Personal Representative of the Estate of Edwin D. Turbeville,
 Sr.,        Appellant,
 
 
 

v.

 
 
 
 Thomas G. Wilson and Robert
 E. Turner, III,        Respondents.
 
 
 

Appeal From Florence County
James E. Brogdon, Jr., Circuit Court Judge

Unpublished Opinion No.
2005-UP-517
Heard June 7, 2005  Filed September 12, 2005

AFFIRMED

 
 
 
 Marvin P. Jackson, of Florence,
 for Appellant.
 Andrew F. Lindemann, of Columbia;
 Marian Williams Scalise, of Myrtle
 Beach, for Respondents.
 
 
 

PER CURIAM:  In this
medical malpractice action, Mary Turbeville, as personal representative of the
estate of Edward Turbeville, Sr., appeals the trial courts grant of summary
judgment to Dr. Robert E. Turner, III, and partial summary judgment to Dr.
Thomas Wilson.[1]  We affirm.
FACTS
On June 30, 1997,
seventy-five-year-old Edwin Turbeville, Sr. (the decedent), was admitted to the
hospital for hip replacement surgery.  Because of the prior removal of the
decedents large intestine, he developed the post-operative complication of a
small bowel obstruction after his small intestines dropped into his
pelvis.  Thomas Wilson, M.D., surgically removed the bowel obstruction on
July 13, 1997, and inserted a Baker tube in the bowel to maintain bowel
function.  Dr. Wilson also inserted a nasogastric tube (NG-Tube) to aid in
the removal of excess gastric fluids while the decedent recovered.  Because
the decedent appeared to improve and his lab work was normal, Dr. Wilson removed
the NG-Tube on the morning of Friday, July 18, 1997.  Thereafter, Dr.
Wilson asked Leslie Stewart, M.D., a surgeon from another practice and with whom
Dr. Wilson shared on-call duties, to check on the decedent throughout the
weekend from the evening of July 18, 1997 until July 20, 1997. 
Other physicians who saw the
decedent during that time period included Robert E. Turner, III, M.D., an
internist, whose partner was the decedents primary care physician.  On
July 20, 1997, the decedent suffered from abdominal pain, nausea, difficulty
breathing, a drop in blood pressure, and chest congestion, and Dr. Turner was
the physician who was consulted the most regarding the decedents
condition.  That evening, the decedent vomited gastric fluid, aspirated the
vomit, and had to be placed on a ventilator.  The decedents condition
continued to deteriorate, he suffered from cardiac arrest, and he died early the
next morning.  No autopsy was ever performed.    
On July 20, 2000, Mary Turbeville (Turbeville),
decedents wife and the personal representative of decedents estate, filed
a medical malpractice action against Drs. Wilson and Turner alleging causes of
action for wrongful death and for the decedents unnecessary pain and
suffering.  Turbeville alleged that Dr. Wilson was negligent in the
performance of a surgical procedure in July 1997 to correct the decedents
bowel obstruction and vicariously liable for the negligence of Dr. Stewart
during post-operative care.  She also alleged Dr. Turner was negligent in
his care of the decedent on the day of his death.   
During discovery, Turbeville deposed
expert Dr. Edward R. McLean, a board-certified general and bariatric
surgeon.  Dr. McLean opined that the decedent may have had a bowel
obstruction with the Baker tube in place, causing a leak.  However, McLean admitted that he could not actually determine from the medical
records that the decedent had a leak.  Dr. McLean stated that the NG-Tube
should not have been removed on July 18, 1997, because the decedent had a very
high gastric fluid output.  He also testified that he believed the decedent
died of an intra-abdominal catastrophe causing cardiorespiratory decompensation.  McLean believed the death could have been prevented through abdominal
x-rays, obtaining blood gasses, replacement of the NG-Tube, and a suctioning of
the lungs.  
Both Dr. Wilson and Dr. Turner moved
for summary judgment.  The trial court granted summary judgment as to the
allegations against Dr. Turner and partially granted Dr. Wilsons motion for
summary judgment.  The court granted summary judgment as to the allegations
that Dr. Wilson negligently performed the corrective bowel surgery and that Dr.
Wilson was responsible for the negligence of Dr. Stewart.  The court ruled
the sole issue for trial will be whether or not Dr. Wilson deviated from any
standards of medical practice in removing the NG-Tube from the decedent on July
18, 1997, and whether this removal proximately caused injury, damage, and/or
death to the decedent.  Turbeville then filed a motion for
reconsideration.  Before the trial court could rule on that motion,
Turbeville filed this appeal.  Based on a lack of jurisdiction given the
pending appeal, the trial court declined to hear the motion for
reconsideration. 
STANDARD OF REVIEW
When reviewing the grant of a
summary judgment motion, the appellate court applies the same standard which
governs the trial court under Rule 56(c) of the South Carolina Rules of Civil
Procedure:  summary judgment is proper when there is no genuine issue as to
any material fact and the moving party is entitled to judgment as a matter of
law.  Fleming v. Rose, 350 S.C. 488, 493-94, 567 S.E.2d 857, 860
(2002).  In determining whether any triable issue of fact exists, the
evidence and all inferences, which can reasonably be drawn therefrom, must be
viewed in the light most favorable to the nonmoving party.  Faile v. South Carolina Dept of Juvenile Justice,
350 S.C. 315, 324, 566 S.E.2d 536, 540 (2002).  If triable issues exist,
those issues must go to the jury.  Young v. South Carolina Dept of Corr., 333 S.C.
714, 718, 511 S.E.2d 413, 415 (Ct. App. 1999).
Summary judgment is not appropriate
when further inquiry into the facts is necessary to clarify the application of
the law.  Vermeer Carolinas, Inc. v. Wood/Chuck Chipper Corp.,
336 S.C. 53, 59, 518 S.E.2d 301, 305 (Ct. App. 1999).  All ambiguities,
conclusions, and inferences arising from the evidence must be construed most
strongly against the moving party.  Bayle v. South Carolina Dept of Transp., 344 S.C. 115, 120, 542 S.E.2d
736, 738 (Ct. App. 2001).  When the parties do not dispute the facts, but
only the conclusions or inferences to be drawn from them, summary judgment
should be denied.  Hall v. Fedor, 349 S.C. 169, 173-74, 561 S.E.2d
654, 656 (Ct. App. 2002).  Moreover, summary judgment is a drastic remedy,
which should be cautiously invoked so no person will be improperly deprived of a
trial of the disputed factual issues.  Lanham v. Blue Cross and Blue
Shield, 349 S.C. 356, 363, 563 S.E.2d 331, 334 (2002).
LAW/ANALYSIS
I. Dr. Turner
Turbeville claims the trial court
erred in granting summary judgment to Dr. Turner because expert testimony or, at
least, common knowledge, presented a reasonable inference that Dr. Turners
negligence proximately caused the death of the deceased.  We disagree.
A. Expert Testimony
Medical malpractice is the failure
of a physician to exercise that degree of care and skill that is ordinarily
employed by the profession under similar conditions and in like surrounding
circumstances.  Keaton v. Greenville Hosp. Sys., 334 S.C. 488, 496, 514
S.E.2d 570, 574 (1999); Jernigan v. King, 312 S.C. 331, 333, 440 S.E.2d
379, 381 (Ct. App. 1993).  To sustain a medical malpractice action, the
plaintiff must establish by expert testimony both the required standard of care
and the defendants failure to conform to that standard.  Botehlo v.
Bycura, 282 S.C. 578, 583, 320 S.E.2d 59, 62 (Ct. App. 1984).  The
reason for requiring expert testimony is that matters of proper medical
diagnosis and treatment ordinarily involve technical knowledge beyond the
ken of the laymen.  Bessinger v. DeLoach, 230 S.C. 1, 11, 94
S.E.2d 3, 8 (1956) (quoting Hill v. Parker, 122 P.2d 476, 482 (Wash. 1942)).  Expert testimony is not
required in medical malpractice cases in situations where the common knowledge
or experience of laymen is extensive enough for them to recognize or infer negligence
on the part of the doctor and also to determine the presence of the required
causal link between the doctors actions and the patients medical problems. 
Pederson v. Gould, 288 S.C. 141, 142, 341 S.E.2d 633, 634 (1986); Hickman
v. Sexton Dental Clinic, P.A., 295 S.C. 164, 168, 367 S.E.2d 453, 455 (Ct.
App. 1988).
Although physicians in one field of
practice may testify as to the standard of care owed by a physician in another
field of practice, the expert witness must profess knowledge of the applicable
standard of care and provide a basis for having acquired that knowledge.  See,
e.g., Lee v. Suess, 318 S.C. 283, 286, 457 S.E.2d 344, 346 (1995)
(holding a plastic surgeon could testify as to the standard of care owed by
family practitioners because he stated his awareness of the standard of care and
showed proof of acquiring that knowledge); Botehlo, 282 S.C. at 587, 320
S.E.2d at 65 (holding an orthopedic surgeon could not testify to the standard of
care owed by a podiatrist because he admitted his unfamiliarity with the
standard of care). 
Dr. McLean admitted in his
deposition that he was not competent to address the standard of care owed by an
internist, such as Dr. Turner, or whether an internist deviated from that
standard of care.  Dr. McLean further testified that there was not anything
Dr. Turner did or did not do that caused the decedents death. 
Turbeville did not present any other expert testimony regarding the standard of
care of an internist or whether Dr. Turner deviated from that standard. 
Thus, viewing the evidence in the light most favorable to Turbeville, no expert
testimony was presented to support the allegation of medical malpractice against
Dr. Turner.  The trial court appropriately granted him summary
judgment.  Botehlo, 282 S.C. at 583, 320 S.E.2d at 62-63 (noting
that on a defendants motion for summary judgment, there will be no issue of
material fact unless the plaintiff presented expert testimony of the standard of
care and the breach of the standard by the defendant). 
B.  Common Knowledge
Exception
Turbeville argues Dr. Turners
actions were such that a person of ordinary knowledge or experience could infer
improper professional conduct so experts were not needed.  Turbeville
points to Dr. Turners failure to reinsert the NG-Tube, failure to react to
the decedents drop in blood pressure, decision to prescribe Lasix, and
failure to react to other symptoms exhibited by the decedent, as being issues
within the ambit of common knowledge and experience of laypersons.  
In discussing the common knowledge
exception, this court has noted that:

 Where the evidence permits the
 jury to recognize or infer a breach of duty without the aid of expert
 testimony, such testimony is not required in order for the case to go to the
 jury.  The application of the common knowledge exception in proving
 negligence in a case involving medical malpractice depends on the particular
 facts of the case.  When expert testimony is not required, the plaintiff
 must offer evidence that rises above mere speculation or conjecture. 
 And, where the evidence permits the jury to recognize or infer a breach of
 duty without the aid of expert testimony, such testimony is not required for
 the case to go to the jury.

Hickman, 295 S.C. at 168, 367
S.E.2d at 455 (citations omitted).
Dr. Turner and various nurses who
were in charge of the decedent on the day of his death testified regarding the
decedents symptoms, various medical treatments given to combat those
symptoms, and the decedents reaction to the treatments.  Dr. McLean,
Turbevilles own expert witness, stated whether an NG-Tube should have been
put in or not, thats debatable.  He also opined this issue posed a
complex question, insinuating a lay jury would not be able to resolve the
issue without the benefit of expert testimony.  Reviewing the testimony and
the issues involved in the case, the trial court determined that lay jurors
are not capable of understanding the complex medical issues that are the subject
of this lawsuit.  The court noted that the case involved complex medical
questions including the purpose of NG-Tubes, when NG-Tubes should be used or
removed, when NG-Tubes should be replaced, what measures should be taken when a
patients blood pressure drops, what measures must be taken when a patient
vomits or becomes tachycardic, and when blood gas tests need to be
performed.  
We agree with the trial court. 
The issues considered in this medical malpractice action dealt with the
diagnosis and treatment of an intensive care patient with numerous medical
problems.  The treatment of those medical problems required the expert
knowledge of a physician trained in such areas.  What treatments should
have been utilized and when they should have been administered are not questions
within the ambit of common knowledge.  Accordingly, the common knowledge
exception does not apply.[2] 
II.
Dr. Wilson
Turbeville argues the trial court
erred in granting partial summary judgment to Dr. Wilson because evidence
through expert testimony and the common knowledge of laymen supported the
allegation that Wilsons negligence
caused the decedents death.  Turbeville also argues that Dr. Stewart was
the agent of Dr. Wilson, and thus, Dr. Wilson is responsible for Dr. Stewarts
negligence.  We disagree.
A.  Expert Testimony
Turbeville asserts that Dr. McLeans
testimony supported an inference that Dr. Wilson was negligent in performing the
corrective bowel surgery.  He argues that Dr. McLeans testimony
supported his allegation that the use of the Baker tubes was negligent. 
Thus, she argues, the trial court erred in granting summary judgment with regard
to allegations concerning the surgery. 
Dr. McLean testified regarding the
use of a Baker tube during the surgery to prevent future bowel obstruction
formations.  Because the benefits [were] so low in using a Baker tube
and the risks [were] significant, Dr. McLean called into question Dr. Wilsons
use of the procedure.  However, he never stated that the use of the Bakers
tube was a deviation from the standard of care expected of general
surgeons.  Furthermore, he testified the Baker tube itself didnt
cause [decedents] death.  In addition, because no tests were
performed, Dr. McLean noted that [t]heres a lot thats unknown in this
case.  
Dr. McLean was unable to state to a
reasonable degree of medical certainty that the use of the Baker tube most
probably resulted in any complications or proximately caused harm.  Because
there was no evidence that the use of the Baker tube deviated from the standard
of care, Turbeville failed to establish through expert testimony that Dr. Wilson
deviated from the standard of care in performing the decedents surgery. 
Accordingly, we find no error with the trial courts grant of summary judgment
as to the surgery.[3]
B.  Common Knowledge
Exception
Citing Cox v. Lund, 286 S.C.
410, 334 S.E.2d 116 (1985), Turbeville argues that Dr. Wilsons own testimony
showed that he could not properly view the decedents bowel obstruction when
he operated.  Thus, she argues, a person of ordinary knowledge would
realize that Dr. Wilson was negligent in performing the surgery. 
In Cox, the defendant
physician attempted to perform a colonoscopy, which resulted in a perforation of
the colon.  Cox, 286 S.C. at 413, 334 S.E.2d at 118.  The
plaintiff presented expert medical testimony that the colon was totally
unprepared for the procedure such that the physician could not see.  Id.
at 417, 334 S.E.2d at 120.  In fact, the defendant physician himself
admitted that the colonoscope should not be advanced when the doctor is unable
to adequately see.  Id. 
The supreme court held [e]xpert testimony is not required to establish
negligence when the act complained of was done in the face of a proscription
known to the actor.  Id. 
Dr. Wilson testified that while
attempting to surgically relieve the decedents bowel obstruction, there came
a point in time where he could not see the obstruction because he was required
to reach into the decedents bowels.  However, he performed a blunt
dissection in which he manually manipulated the area to relieve the
obstruction.  
This case is clearly distinguishable
from the facts in Cox.  Although Dr. Wilson could not see when he
performed the blunt dissection, nothing indicates that this method deviated from
the standard of care.  Dr. McClean did not testify that Dr. Wilson deviated
from the standard of care in freeing the bowel adhesions by means of blunt
dissection.  Moreover, Dr. Wilson never admitted his technique was
inappropriate or deviated from the standard of care.  Because there was no
admission from Dr. Wilson himself that his actions deviated from the standard of
care, a layperson could not determine in this complex medical case whether Dr.
Wilsons actions in performing a blunt dissection were negligent without the
aid of an expert.  Thus, the common knowledge exception does not apply in
this case. 
C.  Liability for Dr.
Stewart
Citing Wilson v. Martin Memorial
Hospital, 61 S.E.2d 102 (N.C. 1950), Turbeville claims Dr. Wilson is liable
for any negligence committed by Dr. Stewart because Dr. Stewart was Dr. Wilsons
agent. 
When a physician for one reason or
another is temporarily unable to attend the patient personally, the
physician, without being viewed as having either abandoned or neglected his
patient, may make provision for a competent physician to attend the patient. 
Johnston v. Ward, 288 S.C. 603, 610-11, 344 S.E.2d 166, 170 (Ct. App.
1986), overruled on other grounds by Spahn v. Town of Port
Royal, 330 S.C. 168, 499 S.E.2d 205 (1998).  In the absence of
negligence in making the substitution, the physician is not liable for injuries
resulting from the substitute physicians want of skill or care unless the
substitute physician is in his employ or is his agent or partner.  Id.
at 611, 344 S.E.2d at 170-71.
Initially, we note Turbeville does
not claim Dr. Wilson was negligent in making the substitution of Dr.
Stewart.  Further, there is no evidence in this case that Dr. Wilson
exercised any control over Dr. Stewart.  Dr. Wilson and Dr. Stewart were
not partners in the same practice, Dr. Wilson did not supervise Dr. Stewart, and
Dr. Stewart did not consult Dr. Wilson on the days he covered for him.  Dr.
Stewart testified that his role as the substituting physician was to care for
the patient just like they were your patient.  Thus, Dr. Stewart was
free to use his own discretion, knowledge, and skill in the care of the patient
without any control, interference, or input from Dr. Wilson.  Most
importantly, the trial court ruled that Dr. Stewarts actions or inactions
did not proximately cause Mr. Turbevilles death.  Turbeville did not
appeal from this finding.  See Brading v. County of Georgetown,
327 S.C. 107, 113, 490 S.E.2d 4, 7 (1997) (holding that an unchallenged ruling,
right or wrong, is the law of the case).  The evidence does not support a
finding of agency in this case. 
Further, we find the North
Carolina case of Wilson v. Martin Memorial Hospital is distinguishable
from the facts in the present case.  In Wilson, a patients treating
obstetrician ordered a second physician to oversee her delivery.  The
delivery resulted in serious, permanent injuries to the patient.  The
second physician testified that he was handicapped in making decisions, that he
had no authority to do what he wanted to do, and that he could not use his own
judgment in making decisions regarding the patients care.  The Wilson court found that the second physician was the agent of the
treating physician.  Wilson,
61 S.E.2d at 104. 
As previously discussed, there is no
evidence that Dr. Wilson exercised control over Dr. Stewarts decisions in
treating the decedent or that Dr. Stewart was handicapped in making care
decisions.  Accordingly, we agree with the trial court that Wilson
is inapplicable to the case at hand.
Viewing the evidence in the light
most favorable to Turbeville, we find no error with the trial courts decision
to grant summary judgment to Dr. Wilson on the issue of vicarious
liability.  
CONCLUSION
Viewing the evidence in the light
most favorable to Turbeville, the trial court properly granted summary judgment
as to Dr. Taylor and partial summary judgment as to Dr. Wilson.  For the
reasons stated herein, the trial courts decision is
AFFIRMED.    
KITTREDGE, BEATTY, and SHORT, JJ.,
concur.

[1]  Turbeville also asserts that the trial court did not view
the facts in the light most favorable to Turbeville in granting summary
judgment.  As will be discussed in further detail, we have reviewed the
evidence in the light most favorable to Turbeville and found no error with the
trial courts rulings.  There is no evidence that the trial court applied
the wrong standard.  Thus, this argument has no merit. 
[2]  Turbeville also claims Dr. Turners silence, after
decedents son told him his belief that the situation with his father was not
normal, was an admission of guilt.  In Greene v. Lilliewood, 272
S.C. 186, 193, 249 S.E.2d 910, 913 (1978), upon being asked if leaving an IUD in
the patient caused problems, the physician looked embarrassed and nodded his
head.  The court treated the physicians response as an
admission.  Id.  In this case, Dr. Turner simply did not reply to the
statement.  We refuse to treat his silence to this statement as an
admission. 
[3] Turbeville also argues on appeal Dr. Wilson
negligently removed the NG-Tube.  However, because the trial court denied
summary judgment on this issue, we need not address this argument.  See
Olson v. Faculty House of Carolina, Inc., 354 S.C. 161, 168, 580 S.E.2d
440, 444 (2003) (holding that the denial of a motion for summary judgment is not
appealable).