THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Robert J.
 Lagroon, License No. 3224, Respondent,
 v.
 South Carolina
 Department of Labor, Licensing and Regulation, State Board of Dentistry, Appellant.
 
 
 

Appeal From Anderson County
 J. C. Buddy Nicholson, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2010-UP-419
Submitted September 1, 2010  Filed September 24,
 2010    
REVERSED

 
 
 
 Kenneth P. Woodington and Lynne W. Rogers, both of Columbia, for
 Appellant.  
 Robert J. Lagroon, pro se, of McCormick, for Respondent.
 
 
 

PER CURIAM: The
 South Carolina State Board of Dentistry (Board) sanctioned Dr. Robert J.
 Lagroon for certain acts of professional misconduct.  After the Administrative
 Law Court (ALC) affirmed as modified the Board's decision,[1] the circuit court found the Board improperly held Dr.
 Lagroon to the standard of an orthodontist and reversed the Board's one-year
 suspension of his license.  On behalf of the Board, the South Carolina
 Department of Labor, Licensing & Regulation (Department) appeals, arguing
 the suspension was within the Board's statutory authority and the Board did not
 hold Dr. Lagroon to the standard of an orthodontist.  We reverse the circuit
 court and reinstate the decision of the Board as modified by the ALC.[2]
The Administrative
 Procedures Act governs appellate review of administrative decisions by the
 Board.  Deese v. S.C. State Bd. of Dentistry, 286 S.C. 182, 184, 332
 S.E.2d 539, 540-41 (Ct. App. 1985).  Appellate review "must be confined to
 the record."  S.C. Code Ann. § 1-23-380(4) (Supp. 2009).  Furthermore:  

 The
 court may not substitute its judgment for the judgment of the agency as to the
 weight of the evidence on questions of fact.  The court may affirm the decision
 of the agency or remand the case for further proceedings.  The court may
 reverse or modify the decision if substantial rights of the appellant have been
 prejudiced because the administrative findings, inferences, conclusions, or
 decisions are: 
 (a) in
 violation of constitutional or statutory provisions; 
 (b) in
 excess of the statutory authority of the agency; 
 (c)
 made upon unlawful procedure; 
 (d)
 affected by other error of law; 
 (e)
 clearly erroneous in view of the reliable, probative, and substantial evidence
 on the whole record; or 
 (f)
 arbitrary or capricious or characterized by abuse of discretion or clearly
 unwarranted exercise of discretion. 

S.C. Code Ann. § 1-23-380(5)
 (Supp. 2009).  "A decision is arbitrary if it is without a rational basis,
 is based alone on one's will and not upon any course of reasoning and exercise
 of judgment, is made at pleasure, without adequate determining principles, or
 is governed by no fixed rules or standards."  Deese, 286 S.C. at
 184-85, 332 S.E.2d at 541.  
1.  First,
 the Department asserts the circuit court
 erred in finding the Board held Dr. Lagroon to the standard of an
 orthodontist.  We agree.  

 A
 person engages in the practice of dentistry when he charges a fee to:
 
 [E]xtract
 teeth, correct malpositions of the teeth or jaws, or take impressions, or
 construct, supply, repair, reline, or duplicate artificial teeth as substitutes
 for natural teeth, or adjust such substitutes, . . . or . . . use X ray for
 dental treatment or dental diagnostic purposes . . . .
 

S.C. Code Ann. §
 40-15-70(2)(b) (2001).  When the Board receives a complaint against a licensed
 dentist, it must investigate the allegations and, in its discretion, may file a
 formal accusation charging the dentist with a violation of the statutes
 governing those who practice dentistry.  S.C. Code Ann. § 40-15-180(1) (2001). 
 Generally, the Board may discipline a dentist who:

 (f) has committed a dishonorable, unethical, or
 unprofessional act that is likely to deceive, defraud, or harm the public; 
 (g) lacks the professional or ethical competence to
 practice the profession or occupation; 
 * * *
 (k) violates a provision of this article or of a
 regulation promulgated under this article; [or]
 (l) violates the code of professional ethics adopted
 by the applicable licensing board for the regulated profession or occupation or
 adopted by the department with the advice of the advisory panel for the
 professions and occupations it directly regulates. 

S.C. Code Ann. § 40-1-110
 (2001).  Specifically, the Board may discipline a dentist who "has
 employed or permitted an unlicensed or unregistered person to practice
 dentistry or dental hygiene" or who "has failed to meet the standards
 of care in the practice of dentistry or dental hygiene or the performance of
 dental technological work."  S.C. Code Ann. § 40-15-190(4) & (14)
 (2001).  The regulation governing the ethical and professional conduct of
 dentists in South Carolina states that "[t]he dentist's primary obligation
 of service to the public shall include the delivery of quality care,
 competently and timely, within the bounds of the clinical circumstances presented
 by the patient.  Quality of care shall be a primary consideration of the dental
 practitioner."  23A S.C. Code Ann. Regs. 39-11 (1983).  This regulation
 also obligates dentists to "maintain patient records in a manner
 consistent with the protection of the welfare of the patient.  Upon request of
 a patient or another dental practitioner, dentists shall provide any
 information that will be beneficial for the future treatment of that
 patient."  Id.  
In
 treating their patients, medical professionals must "exercise that degree
 of care and skill which is ordinarily employed by the profession generally,
 under similar conditions and in like surrounding circumstances."  Jernigan
 v. King, 312 S.C. 331, 333, 440 S.E.2d 379, 381 (Ct. App. 1993).  In an
 action for medical malpractice, a physician's departure from the standard of
 care is established by presentation of two types of evidence:  (1)
 "evidence of the generally recognized practices and procedures which would
 be exercised by competent practitioners in a defendant doctor's field of
 medicine under the same or similar circumstances" and (2) "evidence
 that the defendant doctor departed from the recognized and generally accepted
 standards, practices and procedures in the manner alleged by the plaintiff."  Cox v. Lund, 286 S.C. 410, 414, 334 S.E.2d 116, 118 (1985).  
Both
 general practitioners licensed in other states and specialists may be qualified
 to testify to the appropriate standard of care for a general practitioner in
 South Carolina.  Burroughs v. Worsham, 352 S.C. 382, 403-04, 574 S.E.2d
 215, 226 (Ct. App. 2002) (finding an internist, a colorectal surgeon, and an
 Illinois-licensed family practitioner qualified to testify to the standard of
 care for a South Carolina family practitioner); see also King v.
 Williams, 276 S.C. 478, 482, 279 S.E.2d 618, 620 (1981) ("No longer is
 it proper to limit the definition of the standard of care which a medical
 doctor or dentist must meet solely to the practice or custom of a particular
 locality, a similar locality, or a geographic area.") (internal citation
 omitted).  
We
 reverse the circuit court's decision and reinstate the decision of the Board as
 modified by the ALC because the record does not support the circuit court's
 finding that the Board held Dr. Lagroon to the standard of an orthodontist.  A
 specialist in a medical profession may testify to the standards applicable to
 general practitioners.  Burroughs, 352 S.C. at 403-04, 574 S.E.2d at
 226.  The record reflects that Dr. Tompkins identified himself as a dentist at
 the commencement of his testimony and that he was licensed as a dentist in
 South Carolina prior to becoming an orthodontist.  He formed his opinion in
 this case after reviewing records from both Dr. Lagroon, a dentist, and Dr.
 Fulmer, an orthodontist.  Furthermore, Dr. Tompkins unequivocally stated Dr.
 Lagroon did not meet the standard of care applicable to "a licensed general
 dentist providing orthodontic services."  
In evaluating
 Dr. Lagroon's treatment of Patient, Dr. Tompkins addressed the standards
 applicable to dentists in four aspects of treatment:  assessment, planning, patient
 education, and documentation.  See Cox, 286 S.C. at 414, 334
 S.E.2d at 118 (explaining a physician's departure from the standard of care may
 be established by articulation of practices and procedures employed by
 competent practitioners and evidence of the physician's departure from those
 norms).  First, with regard to assessment of a patient's needs, Dr. Tompkins
 stated, "[Y]ou'd start off with an evaluation of what you've got now. 
 What is it now.  Where am I now and where have we got to go."  Second,
 having established a starting point and projected an ending point, he indicated
 the dentist must develop a treatment plan and demonstrate good judgment in
 determining whether he possesses the requisite skills and training to execute
 it.  According to Dr. Tompkins, a practitioner who does not recognize his
 limitations can "get in trouble."  Third, Dr. Tompkins stated the
 professional must educate his patient:  "[y]ou have to tell the patient
 what they need. . . . And then you try to educate them so that they will make
 the right decision and decide the treatment."  Finally, Dr. Tompkins
 expected a dentist to record his findings and the patient's progress.[3]  
Dr.
 Tompkins took issue with Dr. Lagroon's planning and documentation of Patient's
 treatment, which he classified as a case of medium difficulty for an
 orthodontist.  With regard to planning, Dr. Tompkins stated Patient's case
 "turned out to be a very bad situation in an untrained person's
 hands."  Although Dr. Lagroon treated Patient's midline issue and planned
 to replace the missing and malformed teeth and reduce the overjet, his
 treatment did not address the malocclusion.  After reviewing Dr. Lagroon's and
 Dr. Fulmer's records, Dr. Tompkins determined the effects of Dr. Lagroon's
 treatment were mixed.  According to Dr. Fulmer's records, Patient's midline was
 relocated to its proper place.  However, Dr. Tompkins testified the
 configuration of Patient's upper braces would have increased, rather than
 decreased, the severity of the overjet.  With regard to a purported
 one-millimeter decrease in Patient's overjet, Dr. Tompkins stated,
 "[T]hat's impossible.  It just can't happen."  Moreover, Dr. Tompkins
 saw no reason for Patient to have braces on his bottom teeth.  He believed
 Patient's cross bite resulted from Dr. Lagroon's placement and management of
 Patient's braces.  Although Dr. Lagroon never took any impressions from which
 models could be created, Dr. Tompkins testified a dentist would need a mounted
 set of models to determine whether a particular treatment will improve or
 worsen a patient's bite.  
Upon
 examination, Dr. Tompkins repeatedly complained that the records Dr. Lagroon
 produced in response to the Board's subpoena failed to document Patient's
 condition and omitted important information.  Dr. Tompkins found no evaluation
 of Patient's teeth at the initial presentation, no indication of Patient's
 complaints, no reference to a malocclusion, no examination findings requiring
 braces, and confusing references to upper and lower braces and extraction of
 tooth 7.  "There is nothing here about deep bite, open bite, cross bite,
 [or] protrusion[;] there is nothing in here that would give me any clues as to
 what the problems were and why the braces were put on."  Consequently, he
 testified, the records had no value in determining Patient's prognosis.    
With
 regard to Patient's care, the Board concluded Dr. Lagroon violated Section
 40-1-110(f), (g), (k), and (l), as well as Reg. 39-11(1)(B).  The Board agreed
 with Dr. Tompkins's view that Dr. Lagroon failed to plan adequately for
 Patient's care by failing to prepare essential diagnostic models to assist him
 in formulating a treatment plan and by failing to recognize Patient's
 orthodontic needs exceeded his own abilities and training as a practitioner. 
 The Board found that because Dr. Lagroon lacked adequate training to treat
 Patient, "[t]he course of this case was more adverse to the patient than
 it should have been."  Dr. Lagroon's documentation failures were more
 pervasive, occurring at both the assessment and planning stages of treatment. 
 The Board recognized Dr. Lagroon provided no documentation of Patient's dental
 condition prior to commencing treatment, no prognosis or diagnosis, no
 treatment plan or goals, and no valid purpose for the braces on Patient's lower
 teeth.  Consequently, the record supports the Board's findings and decision
 regarding Dr. Lagroon's failure to render adequate care to Patient, and the
 circuit court erred in reversing this decision.
2.  Next,
 the Department asserts the circuit court erred in striking part of the sanction
 imposed on Dr. Lagroon, because the sanction was well within the Board's
 statutory authority.  We agree.  
Upon
 finding the dentist guilty of an offense charged in the formal accusation, the
 Board may revoke or suspend the dentist's license, reprimand the dentist
 publicly or privately, "or take other reasonable action short of
 revocation or suspension including, but not limited to, probation or requiring
 the person to undertake additional professional training subject to the
 direction and approval of the [B]oard, . . . and other actions considered
 appropriate by the board."  S.C. Code Ann. § 40-15-200 (2001).  In
 addition, the Board "may require the licensee or registrant to pay a civil
 penalty of up to ten thousand dollars and the costs of the disciplinary
 action."  Id.  
In a
 professional licensing disciplinary matter, imposition of sanctions specified
 by the authorizing statute for a violation alleged in the formal accusation is
 not arbitrary or capricious.  Deese v. S.C. State Bd. of Dentistry, 286
 S.C. 182, 185, 332 S.E.2d 539, 541 (Ct. App. 1985).  In such matters, the
 courts will not require a specific sanction for a particular violation when the
 statute authorizing a professional board to impose certain sanctions does not
 do so.  Gale v. State Bd. of Med. Examiners of S.C., 282 S.C. 474, 479, 20
 S.E.2d 35, 38 (Ct. App. 1984).
We
 reverse the circuit court's decision and reinstate the Board's one-year
 suspension of Dr. Lagroon's license.  The circuit court's order ties its
 reversal of this sanction to its finding that the Board improperly held Dr.
 Lagroon to the standard of an orthodontist.[4] 
 In finding the Board applied the correct standard of care, we eradicate the
 basis for the circuit court's reversal of the one-year suspension.  
Furthermore,
 we note the record does not support the circuit court's finding that the
 Board's decision was arbitrary and capricious.  Rather, the Board's order
 reflects careful consideration of the evidence presented, sound analysis of Dr.
 Lagroon's records and testimony in light of Dr. Tompkins's expert testimony,
 and appropriate sanctions aimed at improving the professional services Dr.
 Lagroon offered.  Cf. Deese, 286 S.C. at 184-85, 332 S.E.2d at
 541 (holding an arbitrary decision is one that is "without a rational
 basis, is based alone on one's will and not upon any course of reasoning and
 exercise of judgment, is made at pleasure, without adequate determining
 principles, or is governed by no fixed rules or standards").  After
 finding Dr. Lagroon had permitted an unlicensed person to practice dental
 hygiene in his office and had provided Patient with substandard care in the areas
 of planning and recording treatment, the Board imposed two-stage sanctions.  In
 the first stage, the Board suspended Dr. Lagroon's license for one year but
 provided Dr. Lagroon with the option of avoiding suspension by paying a
 ten-thousand-dollar fine.  In the second stage, the Board placed Dr. Lagroon on
 probation for five years, required him to complete courses in ethics and
 recordkeeping, and subjected him to heightened monitoring and reporting
 requirements during the probationary period.  The Board's order conveys an
 intimate understanding of Dr. Lagroon's violations, and the sanctions therein
 indicate the Board intended to ensure Dr. Lagroon improved his practices before
 taking on additional orthodontic patients.  Consequently, the circuit court erred
 in reversing the suspension of Dr. Lagroon's license.
REVERSED.
HUFF
 and GEATHERS, JJ., and CURETON, A.J., concur.  

[1] The ALC struck that portion of the Board's decision
 that found Dr. Lagroon guilty of violating Section 40-15-212 of the South
 Carolina Code (2001), which establishes criminal penalties for aiding or
 abetting a person in the unlawful practice of dentistry or dental hygiene.  
[2] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[3] This requirement corresponds to Reg. 39-11(1)(B),
 which requires dentists to maintain patient records in a manner consistent with
 the patient's welfare and to produce upon request "any information that
 will be beneficial for the future treatment of that patient."
[4] Presumably, the circuit court did not reverse all the
 Board's sanctions because the Board's finding that Dr. Lagroon permitted
 Assistant's unauthorized practice of dental hygiene remained intact.